# STATE OF MICHIGAN

# COURT OF APPEALS

JENNA S. AFHOLTER, also known as JENNA
S. AFFHOLTER,

Plaintiff-Appellant,

v

PHILLIP C. MATUK,

Defendant-Appellee.

UNPUBLISHED
March 8, 2018

No. 336059
Kent Circuit Court
LC No. 16-002551-NO

Before: MARKEY, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

In this premises liability action, plaintiff appeals as of right the order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

## I. FACTUAL BACKGROUND

This case arises from plaintiff's slip-and-fall injury that occurred on March 12, 2015, at a rental property located in Grand Rapids, Michigan. Defendant owned and operated the four-unit apartment building, and plaintiff was a tenant in Apartment #3. Plaintiff's apartment was located on the second floor and could be accessed through the front door of the house. For most of the winter of 2014 to 2015, plaintiff did not recall having any issues with ice on the sidewalks leading from the front entrance of the house to the driveway and parking area. On March 12, 2015, plaintiff was walking from the front door of the apartment building to her car that was parked behind the apartment building in a designated parking lot. Plaintiff's only available exit was the front door of her apartment building, so she walked down the front steps to the private walkway, which led to the private driveway to the parking lot. While walking to her car in the morning, plaintiff slipped and fell on snow or ice and severely fractured her left ankle.

After plaintiff's fall, three unknown people came to her aid who witnessed the accident. The strangers picked plaintiff up and helped her up to her porch. Subsequently, plaintiff's neighbor came out of the house to assist plaintiff. Plaintiff's neighbor confirmed that she saw plaintiff on the ground after her fall and approached her to help. The neighbor stated that she "could see a patch of ice less than 12 inches around in the middle of the sidewalk area where [plaintiff] had fallen. The ice was easy to see and plainly visible, and I had no trouble avoiding it so that I did not fall." The neighbor further explained that the patch of ice did not reach the edges of the sidewalk and was the only patch of ice that she saw on the sidewalk that morning in March.

-1-

Defendant testified that he owned the apartment building for approximately 30 years and had maintained it as a rental property. Because defendant lives in Lowell, Michigan, he hired a company called Plow Daddy to plow the driveway and shovel the sidewalks of the apartment building. A neighbor down the street from the apartment building owns Plow Daddy. Defendant and the owner of Plow Daddy do not have a formal arrangement, but defendant testified that the owner of Plow Daddy would plow and shovel whenever the weather called for it, and salt the sidewalk at his discretion.

In addition to hiring the plowing and salting services, defendant personally inspects the apartment building at least twice a week to make sure the snow was being plowed and shoveled properly. In fact, the day after the incident, defendant visited the apartment building and stated that the sidewalks were wet, but he did not see any ice. He also noted that while the sidewalks and driveway were always shoveled and plowed, there did remain some hard-packed snow that did not make the sidewalk completely clear or dry. However, he testified that he has never received any complaints from any of his tenants about the condition of the sidewalks or driveway. Furthermore, defendant provides shovels and salt on the porch area for other tenants to use per their leasing agreement. Because plaintiff did not have a private entryway, her leasing agreement differed from the other tenants in the apartment building. The other tenants were responsible for removing snow on their private entryways. Plaintiff was not required to remove the snow. Instead, her lease stated that the landlord, i.e., defendant, would be responsible for "snow removal" and "shovel[ing] walks."

Plaintiff filed her complaint alleging both a statutory claim under MCL 554.139 and a common-law premises liability claim. Defendant subsequently filed a motion for summary disposition arguing the following: (1) that the condition upon which plaintiff fell was open and obvious as a matter of law; therefore, plaintiff's premises liability claim should be dismissed; (2) that defendant did not have actual or constructive notice of the condition; therefore, both plaintiff's premises liability and statutory claims should be dismissed; and (3) that the condition alone did not render the sidewalk unfit for the use intended by the parties; therefore, defendant did not breach any duty owed to plaintiff under MCL 554.139. On October 14, 2016, plaintiff filed a response to defendant's motion for summary disposition conceding that the ice upon which plaintiff slipped was open and obvious, which thereby waived her premises liability claim. However, plaintiff still argued that the open and obvious danger doctrine could not be applied to remove the statutory duty owed by defendant to plaintiff under MCL 554.139.

A hearing was held on defendant's motion for summary disposition. The parties reiterated their arguments, and the trial court took the matter under advisement and issued an opinion and order granting defendant's motion for summary disposition on October 26, 2016. The trial court first explained plaintiff "concede[d] that the ice she slipped on was open and obvious and she acknowledge[d] that this would cut off liability for an ordinary common law premises liability claim." The trial court then turned to plaintiff's statutory claim. First, it held that the principles set forth in *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419; 751 NW2d 8 (2008), applied to all common areas, and stated that "an ideal condition is not required and mere inconvenience of access is not enough to show an area is unfit for its purpose." Next, the trial court held:

Patches of ice are commonly found on walkways throughout Michigan in the winter. There is no evidence that the walkway had reached a point where it was not fit for its intended use. Just because a walkway has some snow or ice on it does not suddenly make it unfit for its use. Again, "[m]ere inconvenience of access" is not enough. As was the case in *Allison*, while defendant's duty to keep common areas fit for intended use can potentially be triggered by the accumulation of snow and ice, it would take "much more exigent circumstances than those obtaining in this case" which involves an ordinary visible patch of ice that apparently occurred as an ordinary result of the freeze-thaw cycle. The record does not show any genuine issue of material fact. [Citations omitted.]

Finally, the trial court stated that plaintiff's reliance on *Benton v Dart Properties*, 270 Mich App 437; 715 NW2d 335 (2006), was improper because this Court did not indefinitely conclude that a "small and visible patch of ice made a walkway unfit for its purpose." This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law. In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Additionally, "[t]he proper interpretation of a statute is a legal question that this Court also reviews de novo." *McCormick v Carrier*, 487 Mich 180, 188; 795 NW2d 517 (2010).

## III. ANALYSIS

Plaintiff argues that the trial court erred when it granted summary disposition because there is a genuine issue of material fact as to whether defendant failed to maintain the sidewalk in a condition fit for its intended use as required under MCL 554.139(1)(a). We disagree.

MCL 554.139(1)(a) provides the following:

(1) In every lease or license of residential premises, the lessor or licensor covenants:

(a) That the premises and all common areas are fit for the use intended by the parties.

In *Benton*, 270 Mich App at 438, this Court addressed MCL 554.139(1)(a) as it applied to an icy sidewalk leading from the plaintiff tenant's apartment to a parking space that caused the plaintiff to slip and fall. *Id*. The sidewalks in question were "patchy" with ice when the plaintiff walked out to his vehicle in the morning. *Id*. at 439. When the plaintiff returned home from work, the sidewalks were covered in snow, which caused him to slip on a patch of ice four to five feet long. *Id*. The Court first held that the sidewalks were common areas under MCL 554.139(1)(a) because they were maintained by the landlord and all tenants relied on the sidewalks to access their apartments and vehicles. *Id*. at 442-443. "Therefore, a landlord has a duty to take reasonable measures to ensure that the sidewalks are fit for their intended use. Because the intended use of a sidewalk is walking on it, a sidewalk covered with ice is not fit for this

purpose." *Id*. at 444. The Court concluded that "[f]rom the evidence presented, reasonable minds might differ regarding whether defendant's preventive measures, which consisted of salting the sidewalks only once in the morning on the day that plaintiff slipped and fell, constituted reasonable care in light of the weather conditions that day. Therefore, summary disposition was not appropriate." *Id*. at 445.

Later, in *Allison*, 481 Mich at 422-423, the Michigan Supreme Court considered whether a landlord violated its duty under MCL 554.139(1)(a) by failing to clear a parking lot of an accumulation of snow and ice that caused a tenant to fall and break his ankle. The Court provided the analytical framework to use when a plaintiff alleges a violation of MCL 554.139(1)(a). First, the Court found that the parking lot was a common area under MCL 554.139(1)(a) because it was accessed by two or more tenants and the landlord retained general control over the parking lot. *Id*. at 428. After determining that the area of the slip and fall is a common area, the Court must then identify "the intended use" of the common area and determine whether conditions made the common area unfit for this intended use. *Id*. at 428-431.

The relevant issue in *Allison* was whether accumulations of snow and ice about one to two inches on the defendant's parking lot violated the defendant's duty to keep the parking lot fit for its intended purpose. *Id*. at 429-430. The Court held that the intended purpose of a parking lot in a leased residential property is to allow the tenants "to park their vehicles in the lot and have reasonable access to their vehicles." *Id*. at 429. According to the Court, unless the lease provides for other or additional purposes of the parking lot, whatever else one might do in a parking lot or use a parking lot for was secondary to the aforementioned intended purpose of parking and accessing vehicles. *Id*. at 431. As long as accumulations of ice and snow did not obstruct the entrance to or the exit from the parking lot, or tenants' access to their vehicles, the parking lot was fit for its intended purpose, and defendant was in compliance with MCL 554.139(1)(a). *Id*. at 430-431. The Court further concluded:

> While a lessor may have some duty under MCL 554.139(1)(a) with regard to the accumulation of snow and ice in a parking lot, it would be triggered only under much more exigent circumstances than those obtaining in this case. The statute does not require a lessor to maintain a lot in an ideal condition or in the most accessible condition possible, but merely requires the lessor to maintain it in a condition that renders it fit for use as a parking lot. Mere inconvenience of access, or the need to remove snow and ice from parked cars, will not defeat the characterization of a lot as being fit for its intended purposes. [*Id*. at 430.]

This Court distinguished *Allison* in *Hadden v McDermitt Apts, LLC*, 287 Mich App 124, 130; 782 NW2d 800 (2010), and ruled that the principles set forth in *Allison* apply to all common areas. In *Hadden*, the plaintiff used an exterior stairway consisting of approximately 12 steps to walk from her second floor apartment to her mailbox on the first floor. *Id*. The stairway was covered by a roof, but the plaintiff "noted the presence of snow on all the stairs of the stairway" and notified the defendants. *Id*. at 130-131. Despite the defendants' assurance that someone "would take care of it when he had the time," the next time the plaintiff used the stairway, it was still covered in snow, and she slipped and fell. *Id*. at 131. According to the plaintiff, she could not see the ice before she fell because "it was black ice and the stairway was too dark." *Id*. After the plaintiff fell, she also "noticed that the gutters overhead were overflowing with water

and icicles had formed." *Id*. This Court held that a material question of fact existed as to whether or not the exit way was fit for its intended use. *Id*. at 131-132. The *Hadden* Court explained:

> [T]he primary purpose of a stairway is to provide pedestrians reasonable access to different levels of a building or structure. Reasonable minds could conclude that the presence of black ice on a darkly lit, unsalted stairway—possibly caused or aggravated by overflowing ice water from overhead gutters in the presence of freezing rain—posed a hidden danger that denied tenants reasonable access to different levels of the apartment building and rendered the stairway unfit for its intended use. [*Id*. at 132.]

Furthermore, the Court held that "MCL 554.139(1)(a) does not require perfect maintenance of a stairway. The stairway need not be in an ideal condition, nor in the most accessible condition possible, but, rather, must provide tenants 'reasonable access' to different building levels." *Hadden*, 287 Mich App at 130. Thus, *Hadden* "is factually distinguishable from *Allison* because black ice on a stairway presents more than the [m]ere inconvenience posed by one to two inches of snow in a parking lot." *Id*. at 132 (quotation marks omitted, alteration in original).

In this case, the area at issue is a private sidewalk that leads from the front entrance of the house to the driveway and parking area. It is undisputed by the parties that the sidewalk is a common area under MCL 554.139(1)(a). The sidewalk is controlled by defendant and is shared and used by all tenants to access the public sidewalk or the residents' parking area. See *Allison*, 481 Mich at 427-428.

Because the sidewalk was a common area, defendant had a statutory duty to ensure that it was fit for the use intended. MCL 554.139(1)(a). A sidewalk's intended use is for walking on it and giving people reasonable access to the areas connected to the sidewalk. *Benton*, 270 Mich App at 444. Plaintiff argues that the sidewalk was not fit for its intended use of walking because there was a patch of ice that caused her to slip and fall. According to *Allison*, 481 Mich at 430, to determine whether an area is fit for its intended use requires the trial court to ask whether the hazard precluded access to the area and prevented tenants from using the area for its intended purpose. This standard is not satisfied by merely establishing that there was ice and snow accumulation and that plaintiff fell. *Id*.

The patch of ice appeared at an unknown time before plaintiff slipped, likely as a part of an ordinary freeze-thaw cycle. Patches of ice are commonly found on walkways throughout Michigan in the winter. Plaintiff argues that the sidewalk was shoveled, but was not completely or entirely free of snow and ice. However, as the Court in *Hadden* stated, an ideal condition is not required and mere inconvenience of access is not enough to show an area is unfit for its purpose. See *Hadden*, 287 Mich App at 130. Here, the patch of ice did not cover the entire length of the sidewalk. Plaintiff admits that she did not look at the ice or examine the conditions of the walkway after her fall. However, according to plaintiff's neighbor, who assisted plaintiff immediately after her fall, the patch of ice was less than 12 inches around in the middle of the sidewalk area. The ice was easy to see and plainly visible. In fact, plaintiff's neighbor and the three strangers who helped plaintiff after she fell had no trouble avoiding it. Plaintiff's neighbor testified that the patch of ice did not reach the edges of the sidewalk and was the only patch of

ice that she saw on the sidewalk that morning. From the evidence, it would appear as though the patch of ice did not preclude access to the sidewalk or prevent tenants from walking on it. At most, the patch of ice was a "mere inconvenience." See *Id*. Thus, the trial court accurately found that one small patch of ice located on the sidewalk is not a condition sufficient to render the sidewalk unfit for its intended use.

While defendant's duty to keep common areas fit for their intended use can potentially be triggered by the accumulation of snow and ice, "it would be triggered only under much more exigent circumstances." *Allison*, 481 Mich at 429-430. Although the Court failed to define "exigent circumstances," a small patch of visible, avoidable, and naturally-occurring ice does not qualify as "exigent circumstances." This is not a case, as in *Hadden*, where there was the presence of black ice on a darkly lit, unsalted stairway, possibly aggravated by overflowing ice water from overhead gutters. *Hadden*, 287 Mich App at 131. In this case, it was daylight out, and the patch of ice was visible and easily avoidable. There was no hidden danger that denied tenants reasonable access to the driveway and parking lot. Furthermore, there is no evidence of any other issues with the sidewalk. Plaintiff had no prior complaints or problems with the walkway during the winter, and defendant testified that none of his tenants, including plaintiff, complained about icy conditions on the sidewalk before.

Moreover, plaintiff argues that the sidewalk on which she fell was her "sole" means of ingress and egress. However, plaintiff fails to acknowledge that the sidewalk was one of two sidewalks leading from the front porch to the driveway. She fell after selecting to walk on one of two sidewalks. Contrary to plaintiff's allegations, she was not injured on a common area that constituted her "sole" means of ingress and egress.

Because evidence that ice existed on the sidewalk and that plaintiff slipped is insufficient to constitute a statutory violation under MCL 554.139(1)(a), there could be no reasonable difference of opinion regarding the fact that tenants were able to use the sidewalk. Accordingly, plaintiff did not establish that the sidewalk was unfit for its intended purpose, and her claim fails as a matter of law. Therefore, summary disposition in favor of defendant is appropriate.[1]

Affirmed.

/s/ Jane E. Markey
/s/ Thomas C. Cameron

---

[1] Because we conclude that the sidewalk was fit for its intended use, we need not reach the issue of notice as argued in plaintiff's and defendant's appellate briefs.