MARKMAN, J.
We granted leave to appeal to address the following questions: (1) whether parking lots in leased residential areas constitute “common areas” under MCL 554.139(l)(a); (2) whether the natural accumulation of snow and ice is subject to the lessor’s duty set *423 forth in MCL 554.139(l)(a) to keep premises and common areas “fit for the use intended by the parties”; and (3) whether the natural accumulation of snow and ice is subject to the lessor’s duty set forth in MCL 554.139(l)(b) to “keep the premises in reasonable repair.” We answer the first two questions in the affirmative and the third question in the negative. Because we conclude that the duty set forth in MCL 554.139(l)(a) was not violated here because one to two inches of snow did not render the parking lot unfit for the use intended, we reverse the judgment of the Court of Appeals and reinstate the trial court’s order granting summary disposition in favor of defendants.
I. FACTS AND PROCEDURAL HISTORY
Plaintiff fractured his ankle during a fall when he was walking on one to two inches of accumulated snow in the parking lot of his apartment complex. He then noticed ice on the ground where the snow had been displaced. Plaintiff filed suit against defendant AEW Capital Management, doing business as Sutton Place Apartments, alleging negligence and breach of the covenant to maintain and repair the premises, MCL 554.139(1). The trial court granted summary disposition to defendant, concluding that the danger was “open and obvious,” and directed that the pleadings be amended to replace AEW with the proper defendants, Village Green Management Company and BFMSIT, II.
The Court of Appeals affirmed the trial court’s ruling on the basis of Teufel v Watkins, 267 Mich App 425, 429 n 1; 705 NW2d 164 (2005), which held that MCL 554.139(1) does not control a lessor’s duty to remove snow and ice from a parking lot. Unpublished opinion per curiam, issued November 28, 2006 (Docket No. *424 269021). The panel expressed its disagreement with Teufel and sought a conflict resolution panel. Id. After this request was denied, the panel granted plaintiffs motion for reconsideration and vacated its initial opinion. Unpublished order, entered January-19, 2007 (Docket No. 269021). The panel then reversed the trial court’s grant of summary disposition, stating that Teufel did not constitute governing precedent because its holding regarding the inapplicability of MCL 554.139(1) was only presented in a footnote. Allison v AEW Capital Mgt, LLP (On Reconsideration), 274 Mich App 663, 669-670; 736 NW2d 307 (2007). The panel also concluded that a parking lot constitutes a common area under MCL 554.139(1)(a), that one of a parking lot’s intended uses entails persons walking on it, and that a parking lot covered with ice is not fit for that purpose. Id. at 670-671. Defendants filed an application for leave to appeal in this Court, and we granted leave to appeal. 480 Mich 894 (2007).
II. STANDARD OF REVIEW
This Court reviews de novo the grant or denial of a summary disposition motion. Saffian v Simmons, 477 Mich 8, 12; 727 NW2d 132 (2007). Matters of statutory interpretation are also reviewed de novo. Id. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). A motion under MCR 2.116(C)(8) should be granted if the pleadings fail to state a claim as a matter of law, and no factual development could justify recovery. Maiden v Rozwood, 461 Mich 109, 119; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties “fails to establish a genuine issue regarding any material fact, [and] the moving party is *425 entitled to judgment as a matter of law.” Id. at 120; see also MCR 2.116(C)(10). There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party. West v Gen Motors Corp, 469 Mich 177, 183; 665 NW2d 468 (2003).
III. ANALYSIS
Plaintiff asserted two different causes of action in this case: (1) negligence and (2) breach of the covenants to keep the premises and common areas fit for their intended use and to keep the premises in reasonable repair, MCL 554.139(1).[1] If defendants had a duty under MCL 554.139(l)(a) or (b) to remove snow and ice from the parking lot, then plaintiff could proceed on his second claim even if plaintiffs negligence claim was barred by the “open and obvious” danger doctrine.[2] MCL 554.139 provides a specific protection to lessees and licensees of residential property in addition to any protection provided by the common law. The statutory protection under MCL 554.139(1) arises from the existence of a residential lease and consequently becomes a statutorily mandated term of such lease. Therefore, a breach of the duty to maintain the premises under MCL 554.139(l)(a) or (b) would be construed as a breach of *426 the terms of the lease between the parties and any remedy under the statute would consist exclusively of a contract remedy.[3]
A. “COMMON AREAS”
MCL 554.139 provides:
(1) In every lease or license of residential premises, the lessor or licensor covenants:
(a) That the premises and all common areas are fit for the use intended by the parties.
(b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenant’s wilful or irresponsible conduct or lack of conduct.
*427 The primary goal of statutory interpretation is “to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute.” G C Timmis & Co v Guardian Alarm Co, 468 Mich 416, 420; 662 NW2d 710 (2003). If the language of the statute is clear, we presume that the Legislature intended the meaning expressed. Id. If the statute does not define a word, we may consult dictionary definitions to determine the plain and ordinary meaning of the word. Koontz v Ameritech Services, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002). However, legal terms of art are to be construed according to their peculiar and appropriate meaning. MCL 8.3a.
MCL 554.139 does not define the term “common areas.” However, Black’s Law Dictionary (6th ed), p 275, defines “common area” as: “[i]n law of landlord-tenant, the portion of demised premises used in common by tenants over which landlord retains control {e.g. hallways, stairs) and hence for whose condition he is liable, as contrasted with areas of which tenant has exclusive possession.” This definition is in accord with the plain and ordinary meaning of the term. “Common” is defined as “belonging equally to, or shared alike by, two or more or all in question[.]” Random House Webster’s College Dictionary (1997). Therefore, in the context of leased residential property, “common areas” describes those areas of the property over which the lessor retains control that are shared by two or more, or all, of the tenants. A lessor’s duties regarding these areas arise from the control the lessor retains over them. See, e.g., Williams v Cunningham Drug Stores, Inc, 429 Mich 495, 499; 418 NW2d 381 (1988) (stating that “a landlord may be held liable for an unreasonable risk of harm caused by a dangerous condition in the areas of common use retained in his control such as lobbies, hallways, stairways, and elevators”).
*428 The issue in this case concerns whether parking lots within leased residential property constitute “common areas” within the meaning of the statute. The Court of Appeals answered in the affirmative, relying on Benton v Dart Properties, Inc, 270 Mich App 437; 715 NW2d 335 (2006), to conclude that parking lots constitute common areas. In Benton, supra at 442-443, the Court of Appeals held that sidewalks, within an apartment complex constitute common areas under MCL 554.139(l)(a) because they are located within the complex, they are constructed and maintained by the lessor, and they are relied on by tenants to access their apartments and vehicles. In this case, the Court of Appeals adopted this reasoning to conclude that parking lots also constitute common areas because they are located within the complex, they are maintained by the lessor, and tenants must necessarily walk on parking lots to access their vehicles. Allison, supra at 670.
We agree that a parking lot within a leased residential property fits within the meaning of “common area” because it is accessed by two or more, or all, of the tenants and the lessor retains general control. Among other things, the lessor controls whether a parking lot is used by members of the public as well as by tenants, the circumstances under which non-tenants can access the lot, the number and size of vehicles that a tenant can park in the lot, the lot’s hours of operation, the means of identification of those entitled to park in the lot, and whether and how particular parking spaces will be allocated. Further, the lessor is responsible for the maintenance and security of the lot. Thus, we believe that parking lots within a leased residential property that are shared by two or more, or all, of the tenants constitute “common areas” under MCL 554.139(l)(a).
*429 B. LESSOR’S DUTY UNDER MCL 554.139(1)( a)
Because a parking lot within a leased residential property is a common area under MCL 554.139(l)(a), the lessor effectively has a contractual duty to keep the parking lot “fit for the use intended by the parties.” The next question concerns whether this covenant encompasses the duty to keep the lot free from the natural accumulation of snow and ice. The Court of Appeals held:
The intended use of a parking lot is to park cars and other motor vehicles; however, in order to access their vehicles and apartments, tenants must also necessarily walk on the parking lot. A second intended use of a parking lot, therefore, is walking on it. A parking lot covered with ice is not fit for this purpose. [Allison, supra at 670-671.]
We agree that the intended use of a parking lot includes the parking of vehicles. A parking lot is constructed for the primary purpose of storing vehicles on the lot. “Fit” is defined as “adapted or suited; appropriate[.]” Random, House Webster’s College Dictionary (1997). Therefore, a lessor has a duty to keep a parking lot adapted or suited for the parking of vehicles. A parking lot is generally considered suitable for the parking of vehicles as long as the tenants are able to park their vehicles in the lot and have reasonable access to their vehicles. A lessor’s obligation under MCL 554.139(1) (a) with regard to the accumulation of snow and ice concomitantly would commonly be to ensure that the entrance to, and the exit from, the lot is clear, that vehicles can access parking spaces, and that tenants have reasonable access to their parked vehicles. Fulfilling this obligation would allow the lot to be used as the parties intended it to be used.
In this case, in construing the meaning of these terms in the contract, neither of the parties has indi *430 cated that the intended use of the parking lot was anything other than basic parking and reasonable access to such parking. Plaintiffs allegation of unfitness was supported only by two facts: that the lot was covered with one to two inches of snow and that plaintiff fell. Under the facts presented in this record, we believe that there could not be reasonable differences of opinion regarding the fact that tenants were able to enter and exit the parking lot, to park their vehicles therein, and to access those vehicles. Accordingly, plaintiff has not established that tenants were unable to use the parking lot for its intended purpose, and his claim fails as a matter of law.
While a lessor may have some duty under MCL 554.139(l)(a) with regard to the accumulation of snow and ice in a parking lot, it would be triggered only under much more exigent circumstances than those obtaining in this case. The statute does not require a lessor to maintain a lot in an ideal condition or in the most accessible condition possible, but merely requires the lessor to maintain it in a condition that renders it fit for use as a parking lot. Mere inconvenience of access, or the need to remove snow and ice from parked cars, will not defeat the characterization of a lot as being fit for its intended purposes.
We recognize that tenants must walk across a parking lot in order to access their vehicles. However, plaintiff did not show that the condition of the parking lot in this case precluded access to his vehicle. The Court of Appeals erred in concluding that, under the facts presented, the parking lot in this case was unfit simply because it was covered in snow and ice.[4] Allison, *431 supra at 670-671. Further, we take issue with the suggestion of the Court of Appeals that a tenant traversing a parking lot, for any reason, might be able to take advantage of the covenant for fitness for the uses intended. A tenant using a common area for a purpose other than that for which the area is intended is not protected by the covenant for fitness, but would be afforded any protections provided by the common law. The statute does not require any level of fitness beyond what is necessary to allow tenants to use the parking lot as the parties intended. In addition, should this point need clarification, a non-tenant could never recover under the covenant for fitness because a lessor has no contractual relationship with — and, therefore, no duty under the statute to — a non-tenant.[5] Plaintiff has not shown that the lot in this case was unfit for its intended use, and the Court of Appeals erred in concluding otherwise.
C. LESSOR’S DUTY UNDER MCL 554.139(l)(b)
The final question concerns whether a lessor’s duty to repair under MCL 554.139(l)(b) extends to snow and ice accumulation in a parking lot. We must distinguish the term “common areas” from the term “premises” if we are to give meaning to all the words of this statute. *432 The lessor’s duty under MCL 554.139(l)(a) applies to “the premises and all common areas,” while the lessor’s duty under MCL 554.139(l)(b) applies only to “the premises.” We must “avoid a construction that would render any part of the statute surplusage or nugatory.” Wickens v Oakwood Healthcare Sys, 465 Mich 53, 60; 631 NW2d 686 (2001).
“Premises” is defined as “a tract of land including its buildings” or “a building or part of a building together with its grounds or other appurtenances[.]” Random House Webster’s College Dictionary (1997). Such a definition would seem to include everything within the boundaries of the apartment complex, including the common areas. However, a statute can give special meaning to a word apart from its everyday use. Under the doctrine of noscitur a sociis, a word is also given meaning in the context of the words around it. Koontz, supra at 318.
In this statute, the Legislature specifically set the term “common areas” apart from the term “premises” by applying the first covenant to both terms and the second covenant only to “premises.” If we conclude that “premises” includes “common areas,” then the phrase “and all common areas” would be entirely superfluous. The only way to give meaning to the phrase “and all common areas” in this context is to conclude that “premises” does not encompass “common areas” and that the covenant to repair under MCL 554.139(1) (b) does not apply to “common areas.”[6]
*433 The exclusion of common areas from the covenant to repair imposed by the statute does not necessarily mean that the lessor is free of any duty to repair common areas, because these areas must still be kept “fit for the use intended by the parties.” The Legislature elected to impose two different duties on the lessor, one for “premises and all common areas” and one for only “premises,” and differentiated those duties through its choice of language, one covenant requiring “fitness” and the other requiring “reasonable repair.” Because both covenants imposed by the statute apply to premises, and only the covenant for fitness applies to common areas, we can reasonably infer that the Legislature intended to place a less onerous burden on the lessor with regard to common areas. Keeping common areas fit for their intended use may well require a lessor to perform maintenance and repairs to those areas, but may conceivably require repairs less extensive than those required by the second covenant. For example, if the lessor has a duty to repair a parking lot under MCL 554.139(l)(b), the lessor arguably may be required to fill a small pothole in the parking lot, even if that pothole did not affect the ability of the tenants to park in that lot. However, because the lessor does not have such a duty with regard to parking lots because they are common areas, the lessor would not necessarily be obligated to fill that pothole under the duties concerning fitness in MCL 554.139(l)(a).
In Teufel, supra at 429 n 1, the Court of Appeals held:
Plaintiff also argues that the trial court erred when it failed to address his argument that [the lessor] had a *434 statutory duty under MCL 554.139 to keep its premises and common areas in reasonable repair and fit for their intended uses, which negates the defense of open and obvious danger. Any error in the trial court’s failure to address this argument is harmless. The plain meaning of “reasonable repair” as used in MCL 554.139(l)(b) requires repair of a defect in the premises. Accumulation of snow and ice is not a defect in the premises. Thus, a lessor’s duty under MCL 554.139(l)(a) and (b) to keep its premises in reasonable repair and fit for its intended use does not extend to snow and ice removal.
This is an accurate assessment of the requirement of “reasonable repair” in MCL 554.139(l)(b). “Defect” is defined as “a fault or shortcoming; imperfection.” Random House Webster’s College Dictionary (1997). Damage to the property would constitute an imperfection in the property that would require mending. Therefore, repairing a defect equates to keeping the premises in a good condition as a result of restoring and mending damage to the property. The accumulation of snow and ice does not constitute a defect in property, and, therefore, the lessor would have no duty under MCL 554.139(l)(b) with regard to snow and ice, except to the extent that such snow and ice caused damage to the property.
This conclusion can be analogized to the government’s duty to maintain highways in reasonable repair under MCL 691.1402(1), the highway exception to governmental immunity. In Nawrocki v Macomb Co Rd Comm, 463 Mich 143, 158; 615 NW2d 702 (2000), this Court held that the “highway exception waives the absolute immunity of governmental units with regard to defective highways under their jurisdiction.” To recover under MCL 691.1402(1), a plaintiff must demonstrate that a defect in the highway was the proximate cause of the plaintiffs injury. Haliw v Sterling Hts, 464 *435 Mich 297, 309 n 9; 627 NW2d 581 (2001). In Haliw, this Court specifically excluded the accumulation of snow and ice from consideration as a defect. Id. More recently, in MacLachlan v Capital Area Transportation Auth, 474 Mich 1059 (2006), this Court held that an accumulation of snow in the roadway did not constitute a “defect in the roadway rendering it unsafe for public travel at all times.”
We hold that the lessor’s duty to repair under MCL 554.139(l)(b) does not apply to common areas and, therefore, does not apply to parking lots. In addition, MCL 554.139(l)(b) requires the lessor to repair defects in the premises, and the accumulation of snow and ice is not a defect. A lessor has no duty under MCL 554.139(l)(b) with regard to the natural accumulation of snow and ice.
D. TEUFEL AS PRECEDENT
The Court of Appeals on reconsideration stated that the holding in Teufel, supra at 429 n 1, was legally flawed for failing to distinguish, or even mention, O’Donnell v Garasic, 259 Mich App 569; 676 NW2d 213 (2003), and for failing to conduct a separate analysis of MCL 554.139(l)(a) and (b). Allison, supra at 668-669. The Court proceeded to observe that it was not bound to follow the discussion of MCL 554.139(l)(a) and (b) in Teufel because, “[h]ad [the] Court in Teufel intended to create a rule of law regarding the availability of the open and obvious danger doctrine when a landlord has a statutory duty under MCL 554.139(l)(a) and (b), it would have done so in the body of the opinion rather than in a footnote.” Id. at 669-670, citing Guerra v Garratt, 222 Mich App 285, 289-292; 564 NW2d 121 (1997).
*436 The Court’s reference to Guerra was misplaced. Guerra did not state that language set forth in a footnote does not constitute binding precedent. Rather, in Guerra, the Court of Appeals was attempting to interpret whether certain language in Lemmerman v Fealk, 449 Mich 56, 77 n 15; 534 NW2d 695 (1995), was meant to limit the retroactivity of the opinion’s general holding or to create an exception to that holding. Guerra, supra at 291. The Court engaged in ordinary interpretative analysis, examining the circumstances and the context in order to properly give meaning to the language. The Court of Appeals concluded that, given the fact that Lemmerman repeatedly set forth its general holding without suggesting any exception and specifically made a statement incompatible with such an exception, this Court would have placed any such exception to the general holding, if it had been intended, in the body of the opinion. Id. at 291-292. Therefore, the Court of Appeals determined that the footnote pertained to the retroactivity of the holding, and did not create an exception to that holding. The statement in Guerra regarding the Lemmerman footnote was merely an analysis of the context of language within a footnote and not a holding that a discussion within a footnote cannot constitute binding precedent.
The essential question is not whether the language in Teufel was contained within a footnote, but whether it created a “rule of law” for the purposes of MCR 7.215(J)(1).[7] A statement that is dictum does not con *437 stitute binding precedent under MCR 7.215(J)(1). McNeil v Charlevoix Co, 275 Mich App 686, 702; 741 NW2d 27 (2007). “[0]biter dictum” is defined as “1. an incidental remark or opinion. 2. a judicial opinion in a matter related but not essential to a case.” Random House Webster’s College Dictionary (1997).
In Teufel, the plaintiff slipped and fell on ice in the parking lot of his apartment complex. Teufel, supra at 426. The Court of Appeals held that the trial court properly granted summary disposition to the defendant apartment complex on the basis of the “open and obvious” danger doctrine. Id. at 428-429. The language in the Teufel footnote was not dictum; rather, the footnote addressed an alternative argument raised by the plaintiff regarding the applicability of MCL 554.139 and was, therefore, necessary to the disposition of the case. Thus, the language in the footnote constituted a rule of law, and the Court of Appeals was obligated to follow this rule under MCR 7.215(J)(1).
The Court of Appeals’ concern that Teufel itself did not follow the precedent of O’Donnell was without merit. In O’Donnell, supra at 581, the Court of Appeals held that a defendant cannot use the “open and obvious” danger doctrine to avoid liability when the defendant has a statutory duty to maintain the premises in accordance with MCL 554.139(1) (a) and (b). However, the Teufel footnote held that MCL 554.139(l)(a) and (b) do not apply to snow and ice removal. Therefore, the “open and obvious” danger doctrine could avoid the defendants’ liability in Teufel, and there was no need to refer to, nor was there any inconsistency with, O’Donnell.
*438 Language set forth in a footnote can constitute binding precedent if the language creates a “rule of law” and is not merely dictum. Teufel, supra at 429 n 1, created a rule of law that the Court of Appeals was bound to follow. MCE 7.215(J)(1). However, to the extent that Teufel held that a lessor’s duty to maintain premises and common areas “fit for the use intended” under MCL 554.139(l)(a) can never include snow and ice removal, we overrule Teufel. There are conceivable circumstances in which a lessor may have a duty to remove snow and ice under MCL 554.139(l)(a), such as when the accumulation is so substantial that tenants cannot park or access their vehicles in a parking lot. As we have already observed, such circumstances were not present in this case. The Court of Appeals erred in reversing the trial court’s order granting summary disposition in favor of defendants under the “open and obvious” danger doctrine.
IV CONCLUSION
We hold that: (1) parking lots in leased residential areas constitute “common areas” under MCL 554.139(1)(a); (2) the natural accumulation of snow and ice is subject to the lessor’s duty established in MCL 554.139(l)(a), but that plaintiff has not shown the duty was violated here because the parking lot was apparently “fit for the use intended by the parties”; and (3) the natural accumulation of snow and ice is not subject to the lessor’s duty established in MCL 554.139(l)(b). Moreover, we believe that the Court of Appeals acted contrary to MCE 7.215(J)(1) in failing to follow the precedent set forth in Teufel and erred in holding that language contained in a footnote cannot be binding precedent. However, we overrule Teufel to the extent that it is inconsistent with our holding in this case. *439 Accordingly, we reverse the Court of Appeals judgment and reinstate the trial court’s order granting summary disposition in favor of defendants.
Taylor, C.J., and Weaver, Corrigan, and Young, JJ., concurred with MARKMAN, J.

 The merits of plaintiffs negligence claim are not before this Court.

 Under common-law negligence principles, a premises owner has a duty to exercise reasonable care to protect an invitee from an unreasonable risk of harm caused by a dangerous condition on the premises, but not when the condition is “open and obvious.” Lugo v Ameritech Corp, Inc, 464 Mich 512, 516; 629 NW2d 384 (2001). However, a defendant cannot use the “open and obvious” danger doctrine to avoid liability when the defendant has a statutory duty to maintain the premises in accordance with MCL 554.139(l)(a) or (b). Woodbury v Bruckner, 467 Mich 922 (2002); O’Donnell v Garasic, 259 Mich App 569, 581; 676 NW2d 213 (2003).

 Although the nature and extent of plaintiffs remedy are not at issue in this case, we note that, typically, a plaintiffs remedy for breach of contract is limited to damages that “arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made.” Kewin v Massachusetts Mut Life Ins Co, 409 Mich 401, 414; 295 NW2d 50 (1980) (citation omitted). The purpose of this remedy is to “place the nonbreaching party in as good a position as if the contract had been fully performed.” Corl v Huron Castings, Inc, 450 Mich 620, 625; 544 NW2d 278 (1996).
The dissent “would hold that a plaintiff who proves a claim under MCL 554.139(1) is entitled to full damages for the injury,” citing the Second Restatement of Torts, § 357, which states that “ ‘[a] lessor of land is subject to liability for physical harm caused to his lessee ... if the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair Post at 448-449. This section of the Second Restatement of Torts applies to the tort of negligence. We reiterate that the merits of plaintiffs negligence claim are not before this Court. In addition, as discussed infra, the covenant to repair, MCL 554.139(l)(b), does not apply to common areas and would not impose a duty on the lessor to keep parking lots free from the natural accumulation of ice and snow.

 The dissent concludes that “plaintiff has made a sufficient showing to survive summary disposition under § 139(l)(a)” on the basis that “fitness *431 for use includes safety.” Post at 443, 444. However, the dissent’s analysis focuses exclusively on premises liability law, the subject of plaintiffs first claim, which, as stated earlier, is not before this Court. Perhaps most relevantly, we do not see walking across one to two inches of snow and ice as being as harrowing an experience as the dissent asserts.

 The dissent disagrees, citing the Second Restatement of Torts, § 357, which states that “ ‘[a] lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with consent of the lessee ....’” Post at 449-450. Again, the dissent’s analysis would apply to premises liability law, under which a non-tenant guest would be entitled to the protections afforded a licensee under common-law principles. The dissent misapprehends what this case is about.

 Even if common areas were covered by the covenant to keep the premises in reasonable repair, this covenant would not impose a duty on the lessor to keep parking lots free from the natural accumulation of snow and ice. “Repair” as a noun is defined as “the good condition resulting from continued maintenance and repairing.” Random House Webster’s College Dictionary (1997). “Repairing” involves “restoring] to a good or sound condition after decay or damage; mend[ing].” Id. *433 Therefore, MCL 554.139(l)(b) refers to keeping the premises in a good condition as a result of restoring and mending damage to the property. There is nothing within the definition of “repair” that would include keeping a property free of snow and ice accumulation.

 MCE 7.215 provides:
(J) Resolution of Conflicts in Court of Appeals Decisions.
(1) Precedential Effect of Published Decisions. A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of *437 Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.