# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 29, 2019

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

155120

CELESTINE STACKER, Personal Representative
of the Estate of MAE HENDRIX,
          Plaintiff-Appellee,

v

                                        SC: 155120
                                        COA: 328191

LAUTREC, LTD,
          Defendant-Appellant.
                                        Oakland CC: 2014-142087-NO
_____/

On November 19, 2018, the Court heard oral argument on the application for leave to appeal the October 27, 2016 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

VIVIANO, J. (*concurring*).

I concur in the Court's order denying leave to appeal. I agree that, under *Allison v AEW Capital Mgt, LLP*, 481 Mich 419 (2008), plaintiff has presented sufficient evidence to survive summary disposition. I write separately because I believe that *Allison*'s holding that MCL 554.139(1)(a) creates an ongoing obligation on the part of the lessor may be premised on an erroneous assumption and should be reexamined. But, since this argument has not been raised by any party, I write only to highlight the issue for future consideration.

Plaintiff Mae Hendrix[1] slipped and fell on an ice patch that formed when water from a garage downspout pooled and froze on the driveway leading to her garage entrance at the apartment complex where she resided. The parties agree that all of the apartment driveways together constitute a common area, as tenants routinely walked across the adjoining driveways to access their own apartments. Plaintiff sued defendant, the owner of the apartment complex, claiming negligence, common-law premises liability, and a violation of MCL 554.139(1)(a).

MCL 554.139 provides, in relevant part, as follows:

       (1) In every lease or license of residential premises, the lessor or

---

[1] Mae Hendrix passed away on May 11, 2017, and the trial court entered an order on December 15, 2017, allowing the personal representative of her estate, Celestine Stacker, to substitute as plaintiff. For ease of reference, I will continue to refer to Ms. Hendrix as "plaintiff."

licensor covenants:

> (a) That the premises and all common areas are fit for the use intended by the parties.

> (b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenant[']s wilful or irresponsible conduct or lack of conduct.

This statute was enacted in 1968 to codify the common-law implied warranty of habitability.[2] In *Allison*, this Court held that "[b]ecause a parking lot within a leased residential property is a common area under MCL 554.139(1)(a), the lessor effectively has a contractual duty *to keep* the parking lot 'fit for the use intended by the parties.' "[3] For the reasons below, I question whether this interpretation comports with the plain language of Subsection (1)(a), which does not appear to create an ongoing obligation on the part of lessors.

Our primary goal in interpreting a statute "is to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute."[4] When the statutory language is clear, "we presume that the Legislature intended the meaning expressed."[5] The plain language of MCL 554.139 creates two covenants in all residential leases: (1) "[t]hat the premises and all common areas are fit for the use intended by the parties," MCL 554.139(1)(a); and (2) that the landlord will "keep the premises in reasonable repair during the term of the lease" and "comply with the applicable health and safety laws," MCL 554.139(1)(b). The first of these covenants uses the present tense of the verb "to be"—"are"—which strongly suggests that the covenant relates to the condition of the premises at the time the covenant is made, i.e., at the time the lease is executed. In other words, it does not appear that this covenant creates an ongoing obligation for the duration of the lease term. By contrast, the second covenant creates such an ongoing obligation by

---

[2] 1968 PA 295. See *Allison*, 481 Mich at 441 (CORRIGAN, J., concurring) ("A reasonable inference arises from the language of MCL 554.139(1)(a) ('fit for the use intended by the parties') that it codifies the implied warranty of habitability.").

[3] *Id*. at 429 (emphasis added).

[4] *Id*. at 427 (quotation marks and citation omitted).

[5] *Id*.

requiring that the landlord "*keep* the premises in reasonable repair during the term of the lease or license."[6] The word "keep" is relevantly defined as "to maintain, or cause to stay or continue, in a specified condition, position, etc.; as, *keep* your engine running."[7] This duty obviously extends beyond the inception of the lease and continues during the lease term.[8]

I concur in the majority's denial order because, under *Allison*, which interpreted the covenant created by MCL 554.139(1)(a) as an ongoing obligation, I agree that there remains a genuine issue of material fact as to whether defendant violated that covenant by failing to keep the driveway "fit for the use intended by the parties." As the Court of Appeals explained, photographs taken from the day of plaintiff's fall show that a "substantial portion" of the driveway was covered in ice formed when water from a downspout pooled in broken and depressed concrete. But, for the reasons above, I believe this Court should reconsider in an appropriate future case whether *Allison*'s interpretation of MCL 554.139(1)(a) as creating an ongoing obligation is consistent with the plain language of the statute.

MARKMAN, J. (*dissenting*).

I respectfully dissent from this Court's order denying leave to appeal. Instead, I agree with Judge O'Brien's partial dissent that this case is materially indistinguishable from the circumstances set forth in *Allison v AEW Capital Mgt, LLP*, 481 Mich 419 (2008), and thus would reverse on the basis of that decision.[9]

---

[6] MCL 554.139(1)(b) (emphasis added).

[7] *Webster's New Twentieth Century Dictionary of the English Language, Unabridged* (2d ed).

[8] See also Schier, *Draftsman: Formulation of Policy*, 2 Prospectus 227, 233 (1968) (emphasis added) ("Under [MCL 554.139,] the occupant of rented housing, whether a lessee or a licensee, has the benefit of two covenants which will be found in every rental agreement. The first covenant is in effect a warranty that the premises *are fit* for the uses intended by the parties *at the time of taking possession*. The second is in effect a *promise of future performance* and states that the lessor or licensor covenants to keep the premises in reasonable repair during the term of occupancy and to comply with all applicable health and safety laws.").

[9] As Justice VIVIANO recognizes, neither party asks this Court to reexamine our decision in *Allison*. Moreover, because the driveway here was "fit for the use intended by the parties" under MCL 554.139(1)(a) when the injury occurred, it is unnecessary to assess whether *Allison* correctly interpreted that provision as imposing an ongoing obligation upon the lessor. However, even if Justice VIVIANO's suggested interpretation of the

Plaintiff lived in an apartment complex that has side-by-side driveways with connected garages. The driveways connect the public road to each tenant's garage, and the garages open to their driveways and have rear-entry doors to a walkway that connects to the residential units. At the end of the row of garages, the driveways merge into an outdoor sidewalk that also leads to the residential units. Plaintiff and her husband parked their vehicle in front of their garage, which was the second garage to the right of the end of the row. Plaintiff collected groceries from the trunk of the vehicle and began to walk across the adjoining driveway toward the outdoor sidewalk, but as she walked, she slipped and fell on ice. The ice had allegedly unnaturally accumulated between the driveway closest to the sidewalk and plaintiff's driveway because of pooling from a downspout into an area of depressed and broken pavement. The rest of the driveway contained only small patches of snow. Tenants routinely walked across neighboring driveways to reach their residential units, rather than walking through the garage and exiting through the rear-entry doors.

Plaintiff brought a claim against defendant, the apartment owner, seeking damages on the basis that defendant had violated the duty to keep the premises fit under MCL 554.139(1)(a). The trial court granted defendant's motion for summary disposition on the claim, but the Court of Appeals in a split decision reversed, concluding that genuine issues of material fact precluded summary disposition. *Hendrix v Lautrec, Ltd*, unpublished per curiam opinion of the Court of Appeals, issued October 27, 2016 (Docket No. 328191), p 4. This Court then ordered oral argument on the application. *Stacker v Lautrec*, 501 Mich 1085 (2018).

The issue here concerns whether there is a genuine issue of material fact that defendant breached MCL 554.139(1)(a), which provides:

> (1) In every lease or license of residential premises, the lessor or licensor covenants:

> (a) That the premises and all common areas are *fit for the use* intended by the parties. (Emphasis added.)

In *Allison*, this Court addressed a lessor's duty under MCL 554.139(1)(a) with regard to 1 to 2 inches of snow and ice covering the parking lot of an apartment complex. We observed that "a parking lot is constructed for the primary purpose of storing vehicles on

---

statute were correct, I would still reverse, as plaintiff has not demonstrated that the driveway was unfit when the lease was executed.

the lot" and therefore a lessor has a duty under MCL 554.139(1)(a) to keep the lot fit for the parking of vehicles. *Allison*, 481 Mich at 429. This Court also "recognize[d] that tenants must walk across a parking lot in order to access their vehicles," but held that

> plaintiff did not show that the condition of the parking lot in this case precluded access to his vehicle. The Court of Appeals erred in concluding that, under the facts presented, the parking lot in this case was unfit simply because it was covered in snow and ice. [*Id*. at 430-431.]

This Court further explained that

> [t]here are conceivable circumstances in which a lessor may have a duty to remove snow and ice under MCL 554.139(1)(a), such as when the accumulation is so substantial that tenants cannot park or access their vehicles in a parking lot. As we have already observed, such circumstances were not present in this case. [*Id*. at 438.]

The Court of Appeals majority distinguished the instant case from *Allison* on the basis that

> a driveway is not a parking lot. Unlike a parking lot, the connected driveways in this case are not used primarily for parking in practice; they are also intended for pedestrian access to the garages and pedestrian access to the residential units. In these senses, the driveways are more akin to sidewalks. [*Hendrix*, unpub op at 4.]

However, as correctly noted by Judge O'Brien in dissent, the parking lot in *Allison* was also "intended for pedestrian access to" the parking lot and the residential units. *Id*. at 1 (O'Brien, J., concurring in part and dissenting in part). Indeed, *Allison* explicitly recognized that "tenants must walk across a parking lot in order to access their vehicles," *Allison*, 481 Mich at 430, and thus concluded that a parking lot must also provide "reasonable access to [the tenants'] parked vehicles," *id*. at 429. In other words, *Allison* concluded that a parking lot must be "fit" for *both* parking vehicles *and* walking between the vehicles and the residential units. We then explained that the parking lot in that case was "fit" for walking between the vehicles and the residential units if it provided tenants "reasonable access" to each of those areas. *Id*. Similarly, the driveways at issue here are intended for the parking of vehicles, and as part of that intended use they must also be "fit" for walking between the vehicles and the residential units. Accordingly, as in *Allison*, the lessor had a similar duty to ensure "reasonable access" to both the parked vehicles and the residential units.

Assuming *arguendo* that the Court of Appeals majority correctly concluded that, unlike the parking lot in *Allison*, the driveways at issue "are not used primarily for parking in practice," *Hendrix*, unpub op at 4, this purported distinction does not alter the relevant legal inquiry. The statute does not alter a lessor's duty of "fitness" on the basis of whether an intended use of an area is *primary* or not. Rather, as in *Allison*, the driveways here were intended for *both* parking vehicles *and* walking between those vehicles and the residential units and as a result had to provide "reasonable access" to those areas. Thus, *Allison* precisely governs the determination of whether defendant violated MCL 554.139(1)(a) in this case, without regard to whether the driveways were "used primarily for parking in practice."

The ice on the driveway did not deprive plaintiff of "reasonable access" to her vehicle or residential unit. As *Allison* again explained:

> While a lessor may have some duty under MCL 554.139(1)(a) with regard to the accumulation of snow and ice in a parking lot, it would be triggered only under much more exigent circumstances than those obtaining in in this case. The statute does not require a lessor to maintain a lot in an ideal condition or in the most accessible condition possible, but merely requires the lessor to maintain it in a condition that renders it fit . . . . Mere inconvenience of access . . . will not defeat the characterization of a lot as being fit for its intended purposes. [*Id*. at 430.]

The ice on the driveway did not "preclude" plaintiff from accessing either her vehicle or her residential unit. *Id*. The ice did not extend across the width of the driveway and therefore could have been avoided. Thus, the accumulation here was, in fact, less "exigent" than in *Allison*, in which the entire lot was covered with ice and snow. Plaintiff notes, however, that, unlike the conditions in *Allison*, the ice on the driveway here was arguably created unnaturally by the formation of ice that resulted from pooling from a downspout into an area of depressed and broken pavement on the driveway. However, the lessor's duty under MCL 554.139(1)(a) relates to the *condition* of the area and does not change depending on whether an icy condition has been created by natural or unnatural causes. So long as the area itself is "fit for the use intended by the parties,"

there is no liability under MCL 554.139(1)(a). Because the driveways here, in my judgment, were entirely "fit" for the use of parking a vehicle and provided "reasonable access" to vehicles and residential units, plaintiff is not entitled to relief. Accordingly, I would reverse.[10]

ZAHRA, J., joins the statement of MARKMAN, J.

CAVANAGH, J., did not participate in the disposition of this case because the Court considered it before she assumed office.

---

[10] Plaintiff here also sought damages on the basis of common-law premises liability. The trial court granted defendant's motion for summary disposition on that claim, and the Court of Appeals affirmed. Plaintiff did not appeal the Court of Appeals' resolution of this issue and thus it is not before this Court.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 29, 2019



Clerk

a0326