*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIE GRIFFIN,

Plaintiff-Appellant,

v

TRUMBULL INSURANCE COMPANY and
MICHIGAN ASSIGNED CLAIMS PLAN,

Defendants-Appellees,

and

ALLSTATE INSURANCE COMPANY,
ESURANCE PROPERTY & CASUALTY
INSURANCE COMPANY, and JOHN DOE
INSURANCE COMPANY,

Defendants.

FOR PUBLICATION
September 24, 2020
9:00 a.m.

No. 344272
Wayne Circuit Court
LC No. 17-006082-NF

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

TUKEL, J.

Plaintiff appeals as of right the trial court's order granting summary disposition to defendants Trumbull Insurance Company (Trumbull) and the Michigan Assigned Claims Plan (MACP). The trial court held that Trumbull was not the highest-priority no-fault insurer for purposes of plaintiff's claim for personal protection insurance (PIP) benefits and that the MACP was not required to assign an insurer because another insurer, Harleysville Insurance Company (Harleysville), was the highest-priority insurer. We affirm.

## I. UNDERLYING FACTS

In May 2016, plaintiff was driving his motorcycle when a truck merged into plaintiff's lane. Plaintiff crashed while attempting to avoid the truck, but the truck did not actually make physical contact with plaintiff. The truck driver's name, telephone number, and residential address were recorded in the police report of the incident. Five days after the crash, plaintiff's attorney

-1-

sent a letter to the truck driver informing him that plaintiff intended to take legal action. The letter asked the truck driver to forward the letter to his insurance company, but did not ask for the truck driver to actually contact plaintiff or his attorney in any way. Plaintiff additionally informed Trumbull, the insurer of his motor vehicles, of his accident, but Trumbull refused to pay plaintiff any PIP benefits. Rather, Trumbull attempted to locate the truck driver; despite multiple telephone calls and visits to the truck driver's residence, these attempts to contact the truck driver were unsuccessful. Trumbull then closed its investigation without having made contact with the truck driver.

In April 2017, 11 months after the accident, plaintiff retained MEA Research Services, Inc., Ltd. (MEA Research Services), a Dallas, Texas company, to attempt to identify the truck driver's insurance provider. MEA Research Services was unsuccessful and informed plaintiff that it could not identify any insurance provider for the truck driver. Plaintiff failed to take any additional actions to communicate with the truck driver or to identify his insurance provider or the insurance provider of the truck he drove the day of the accident. Plaintiff then filed a complaint in April 2017 seeking, in relevant part, PIP benefits from Trumbull and for the MACP to assign his claim to an insurer.

In September or October of 2017, Trumbull hired an investigator to serve the truck driver with a subpoena. The investigator found the truck driver and gave the subpoena to the truck driver. The truck driver appeared for a deposition within one month and, in his deposition, stated that he was driving a work truck for his former employer the day of the accident. Based on this information, it was determined that the insurer of the truck at the time of the accident was Harleysville.[1]

After identifying Harleysville as the highest-priority insurer under MCL 500.3114(5),[2] Trumbull moved for summary disposition under MCR 2.116(C)(10) and argued that it was not

---

[1] The parties agree that Harleysville is the highest-priority insurer.

[2] At the time of plaintiff's injury, MCL 500.3114(5), as amended by 2002 PA 38, stated:

> A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> > (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.
> >
> > (b) The insurer of the operator of the motor vehicle involved in the accident.
> >
> > (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.
> >
> > (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

The 2002 amendment worked no change regarding the priorities.

required to pay any PIP benefits to plaintiff because Harleysville was the highest-priority insurer. The MACP also filed a motion for summary disposition under MCR 2.116(C)(10) and argued that plaintiff's claim against it should be dismissed because plaintiff was insured by Trumbull at the time of the accident. Plaintiff opposed both motions, but following a hearing and supplemental briefing the trial court granted summary disposition to Trumbull and the MACP.

In granting Trumbull's motion, the trial court determined that Harleysville could have been identified within one year of the accident if plaintiff had acted with "reasonable diligence." The trial court emphasized that plaintiff sent only one letter to the truck driver, a letter that did not even ask him for any information, but instead suggested that he contact his own insurance company. The trial court also stated that the MEA Research Services' search was limited to any personal automobile insurer the truck driver may have had. Finally, the trial court highlighted that Trumbull ultimately was able, with a subpoena, to secure the truck driver's participation in a deposition, something plaintiff had never even tried. Thus, the trial court ruled, Trumbull was not the highest-priority insurer. The trial court additionally granted summary disposition to the MACP because there was no dispute between two or more insurers and Harleysville was identifiable as the highest-priority insurer.

Plaintiff then moved for reconsideration and the trial court denied plaintiff's motion. This appeal followed.

## II. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

The moving party has the initial burden to support its claim with documentary evidence, but once the moving party has met this burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). Additionally, if the moving party asserts that the nonmovant lacks evidence to support an essential element of one of his or her claims, the burden shifts to the nonmovant to present such evidence. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). Finally, "[i]ssues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). "Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning. When

the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011).

## III. ANALYSIS

### A. IDENTIFICATION OF HARLEYSVILLE

Plaintiff argues that the trial court's ruling that Harleysville was identifiable as the highest-priority insurer had plaintiff acted with reasonable diligence, and thus that plaintiff's claim against Trumbull must be dismissed, was erroneous. We disagree.

When interpreting the no-fault act, "[t]erms contained in the no-fault act are read in the light of its legislative history and in the context of the no-fault act as a whole." *Frierson v West American Ins Co*, 261 Mich App 732, 734; 683 NW2d 695 (2004). Furthermore, "[g]iven the remedial nature of the no-fault act, courts must liberally construe its provisions in favor of the persons who are its intended beneficiaries." *Id*. Thus, while courts interpreting the no-fault act must give every word in the statute its plain and ordinary meaning in light of the larger statutory scheme, *Driver*, 490 Mich at 246-247, courts also must construe provisions of the no-fault act in favor of its insured beneficiaries, *Frierson*, 261 Mich App at 734.

The no-fault act establishes the order in which potential insurers are responsible for paying PIP benefits. See MCL 500.3114. The no-fault act also limits the liability of insurers through MCL 500.3145(1), commonly referred to as the one-year-back rule. "The one-year-back rule is designed to limit the amount of benefits recoverable under the no-fault act to those losses occurring no more than one year before an action is brought." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 203; 815 NW2d 412 (2012). Thus, as a practical matter, a plaintiff has one year from the date of his or her injury to identify the highest-priority insurer as established by MCL 500.3114, because only the highest-priority insurer is liable for a plaintiff's PIP benefits. If the highest-priority insurer is identifiable within that time, then only that insurer is liable for a plaintiff's PIP benefits. See MCL 500.3114; 500.3145(1). But, "when an insurer that would be liable under one of the exceptions in MCL 500.3114(1) cannot be identified, the general rule applies and the injured party must look to her own insurer for personal protection insurance benefits." *Frierson*, 261 Mich App at 738.

Plaintiff relies heavily on *Borgess Med Ctr v Resto*, 273 Mich App 558, 585; 730 NW2d 738 (2007)[3] and *Frierson* to argue that lower-priority insurers are responsible for the payment of benefits when higher-priority insurers cannot be identified. In *Borgess Med Ctr*, 273 Mich App at 585 (WHITE, J., *concurring*), the "[d]efendant indisputably insured the owner of the occupied vehicle, and no insurer in a higher priority was identified" so the defendant was liable for the

---

[3] The Michigan Supreme Court vacated the majority opinion of this Court in *Borgess Med Ctr v Resto*, 273 Mich App 558; 730 NW2d 738 (2007), but affirmed this Court's judgment "for the reasons stated in the concurring opinion." *Borgess Med Ctr v Resto*, 482 Mich 946; 754 NW2d 321 (2008). Plaintiff asks this Court to rely on the majority decision; for the reasons stated later we decline to do so.

plaintiff's PIP benefits. *Borgess* does not include any discussion of whether a higher-priority insurer could have been identified.

In *Frierson*, the highest-priority insurer could not be identified because the plaintiff was a passenger on a motorcycle when an unidentified motor vehicle turned into the plaintiff's lane, causing the operator of the motorcycle the plaintiff was riding on to crash while attempting to avoid hitting the oncoming motor vehicle. *Id*. at 733. "The police were unable to locate the motor vehicle and there [was] no information regarding the vehicle, its driver, or its insurance." *Id*. Consequently, the identity of the driver of the motor vehicle that caused the motorcycle crash was not identifiable and "the parties agree[d] that the insurers listed in subsections a to d of MCL 500.3114(5) either [did] not exist or [could not] be identified." *Id*. at 737. In light of the impossibility of identifying an insurer under MCL 500.3114(5), the *Frierson* Court held that "when an insurer that would be liable under one of the exceptions in MCL 500.3114(1) *cannot be identified*, the general rule applies and the injured party must look to her own insurer for personal protection insurance benefits." *Id*. at 738 (emphasis added). Thus, under *Frierson*, the general rule that an injured party's own insurer is liable for PIP benefits only applies if a higher-priority insurer under MCL 500.3114 *cannot be identified*.[4]

*Frierson* did not hold that the general rule applies if a higher-priority insurer could not be identified within a reasonable time or through reasonable efforts. Rather, *Frierson*, simply holds that the general rule applies if a higher-priority insurer *cannot be identified*. As such, *Frierson* calls for a binary analysis that asks only whether a higher-priority insurer is identifiable. In this case, Harleysville was a higher-priority insurer than Trumbull, and the undisputed facts establish that Harleysville could have been, and in fact actually was, identified. *Frierson* does not take into consideration the effort required to identify a higher-priority insurer such as Harleysville. Thus, due to the simple fact that Harleysville was identifiable, the general rule does not apply and plaintiff cannot collect PIP benefits from Trumbull, because Harleysville was a higher-priority insurer. See *Frierson*, 261 Mich App at 738. Consequently, while the trial court erred to the extent it considered whether Harleysville could have been identified with "reasonable diligence," the trial court still reached the right result for the wrong reason. Accordingly, the trial court's decision to grant summary disposition to Trumbull is affirmed. See *Lane v KinderCare Learning Centers, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998) ("[T]his Court will not reverse where the trial court reached the right result for the wrong reason.").

## B. PLAINITFF'S CLAIMS AGAINST THE MACP

Plaintiff argues that because this case involved a priority dispute between two insurers the MACP should have assigned an insurer to pay plaintiff's PIP benefits. We disagree.

When plaintiff sued the MACP, he alleged that, in the event Trumbull was not responsible for paying his claim for PIP benefits, there was a priority dispute that required the MACP to assign

---

[4] The exceptions to MCL 500.3114(1) referenced in *Frierson*, 261 Mich App at 738, create rules of priority for specific circumstances, such as MCL 500.3114(5), which establishes priority for accidents involving motorcycles. See MCL 500.3114(1), (2), (3), and (5).

-5-

his claim. As discussed above, a plaintiff seeking PIP claims ordinarily must turn to the plaintiff's own insurer or an insurer of one of the vehicles or drivers involved in the accident. However, "[e]ven when there does not appear to be any applicable PIP coverage, the Legislature provided that an injured person could obtain PIP benefits through the MACP." *Spectrum Health Hosp v Mich Assigned Claims Plan*, 330 Mich App 21, ___; 944 NW2d 412, 418 (2019) (Docket No. 343563); slip op at 5, citing MCL 500.3172(1). Thus, "[a]ll self-insurers or insurers writing insurance as provided by the no-fault insurance act are required to participate in the MACP, with the associated costs being 'allocated fairly among insurers and self-insurers.' " *Id.*, quoting MCL 500.3171(2). With this comprehensive scheme,

> the Legislature ensured that every person injured in a motor vehicle accident would have access to PIP benefits unless one of the limited exclusions in the no-fault act apply, and the losses suffered by uninsured persons injured in motor vehicle accidents could be indirectly passed on to the owners and registrants of motor vehicles through insurance premiums. [*Id.*]

Specifically, MCL 500.3172(3), as amended by 2012 PA 204,[5] provides, in relevant part, that a claim will be assigned to the MACP if "the obligation to provide personal protection insurance benefits cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss."

Plaintiff argues that subsection (3) applies in light of the purported dispute between Trumbull and Harleysville regarding PIP coverage for plaintiff. The no-fault act does note define "dispute." "All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a. "We may consult dictionary definitions to give words their common and ordinary meaning." *Krohn v. Home–Owners Ins. Co*, 490 Mich. 145, 156; 802 NW2d 281 (2011) (citations omitted).

The word "dispute" is defined as "to engage in argument: debate," "to struggle against: oppose," and "to contend over." *Webster's Collegiate Dictionary* (11th ed). Harleysville has not taken any part in this case and no evidence has been presented showing that Harleysville refused to provide plaintiff with PIP benefits. Consequently, even though Harleysville is undoubtedly the highest-priority insurer in this case and Trumbull argues that Harleysville, not Trumbull, should provide plaintiff with PIP benefits, there is no "dispute" in this case "between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss." MCL 500.3172(3). As applicable here, any disagreement between Harleysville and Trumbull is purely academic and theoretical, as no claim ever was made against Harleysville. Harleysville has not actually disagreed, and given its status as a non-party, could not disagree, with Trumbull's argument in this case that Harleysville is the highest-priority insurer and that it should provide PIP

---

[5] MCL 500.3172 has since been amended by 2019 PA 21. The current version of MCL 500.3172 did not become effective until June 11, 2019, after the events at issue in this case. Consequently, the former version of MCL 500.3172 applies in this case.

benefits to plaintiff. Accordingly, because there is not an actual dispute between two or more insurers, applying MCL 500.3172(3)'s clear and unambiguous language as written, we conclude that subsection (3) simply does not apply to the facts and circumstances of this case. Accordingly, the trial court correctly dismissed plaintiff's claim against the MACP.

## C. SANCTIONS

Plaintiff argues that the trial court should have sanctioned Trumbull for failing to affirmatively disclose its failure to locate the truck driver. We disagree.

An issue raised in the trial court and pursued on appeal is preserved even if the trial court failed to address or decide the issue. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Plaintiff raised this issue at the trial court level, but the trial court failed to address or decide this issue. Nevertheless, "This Court may address the issue because it concerns a legal question and all of the facts necessary for its resolution are present." *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015). We choose to do so here.

Plaintiff requested sanctions pursuant to what is now MCR 1.109(E)(5),[6] which states:

> The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The following subsection, MCR 1.109(E)(6) states

> If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

---

[6] MCR 2.114, the court rule relied on by plaintiff below, was repealed, effective as of September 1, 2018. The language previously found in MCR 2.114(D) has been retained in MCR 1.109(E).

Finally, MCR 1.109(E)(7) also provides for sanctions if "a party plead[s] a frivolous claim or defense."

Plaintiff points to the failure of Trumbull's counsel to affirmatively inform the trial court that it had unsuccessfully attempted to contact the truck driver before plaintiff filed this lawsuit. According to plaintiff, the failure of Trumbull's counsel to inform the court, coupled with its argument that plaintiff could have identified the truck driver's insurer with reasonable diligence, "clearly violate[d] the duty to be candid" and was, in fact, "dishonest." Plaintiff's argument fails for two reasons: (1) plaintiff's argument is not supported by the record, and (2) under *Frierson*, Trumbull's previous failed attempts to contact the truck driver and identify Harleysville are not relevant because Harleysville was eventually identified.

First, plaintiff's argument is not supported by the record. Trumbull's summary-disposition argument was that it was not the highest-priority insurer. To support that argument, Trumbull asserted that plaintiff could have discovered the truck's insurer with reasonable diligence. Trumbull never argued, however, that it did not try to identify the insurer or that identifying the insurer would be easy. Instead, Trumbull simply asserted that plaintiff could have done it with reasonable diligence. In doing so, Trumbull relied on plaintiff's lack of effort in attempting to learn the insurer's identity and its own ability to obtain the truck driver's presence at a deposition with just one subpoena. While Trumbull's earlier efforts to contact the truck driver, including sending several letters, making a few phone calls, and visiting his home multiple times, may well have been relevant (more so to plaintiff's responsive arguments than defendant's position), plaintiff's assertion that the trial court was misled by Trumbull's "dishonesty" does not reflect the briefing below. Moreover, contrary to plaintiff's assertion that "defense counsel still declined to inform the trial court that its investigation was also unsuccessful" even when pressed by the trial court, the record reflects that Trumbull's counsel intentionally declined to comment on its own efforts because he was "worried that if [he] g[o]t too far into that, [he was] going down a path that subjects [his] client to basically looking like they didn't do enough, when they didn't have to"—an assertion plaintiff has not opposed with any legal authority. Thus, Trumbull did not mislead the trial court.

Second, Trumbull's failed efforts to contact the truck driver were irrelevant. As discussed earlier, under *Frierson*, 261 Mich App at 738, Trumbull would only be liable for plaintiff's PIP benefits if Harleysville could not be identified. But Harleysville was identified. Thus, prior efforts to identify Harleysville or to contact the truck driver were frankly irrelevant to this binary analysis. Consequently, Trumbull should not have been sanctioned.

IV. CONCLUSION

Affirmed. Trumbull and MACP, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Kirsten Frank Kelly