*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KANDICE HOLDER,

      Plaintiff-Appellant,

FOR PUBLICATION
March 21, 2024

v

ANCHOR BAY INVESTMENTS, INC.,

      Defendant-Appellee.

No. 364401
St. Clair Circuit Court
LC No. 2021-000013-NI

Before: MURRAY, P.J., and CAMERON and PATEL, JJ.

PATEL, J. (*concurring in part and dissenting in part*).

I concur with the majority in vacating the trial court's grant of summary disposition to defendant on plaintiff's common-law premises liability claim and remanding for reconsideration in light of our Supreme Court's decision in *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95; 1 NW3d 44 (2023). I also concur with the majority in affirming the grant of summary disposition to defendant on plaintiff's statutory claims under MCL 554.139(1)(b) and MCL 125.536 with regard to the lack of handrails or guardrails on the subject stairway.

But I respectfully dissent and would reverse the grant of summary disposition to defendant under MCR 2.116(C)(10) on plaintiff's statutory claim under MCL 554.139(1)(a) and would remand for further proceedings because I believe there is a genuine issue of material fact whether the subject stairway was "fit for the use intended by the parties" given the algae growth.

Defendant had a statutory duty to ensure that the subject stairway was fit for the use intended. MCL 554.139(1)(a). As this Court explained in *Hadden v McDermitt Apartments, LLC*, 287 Mich App 124, 130; 782 NW2d 800 (2010), "[t]he primary purpose or intended use of a stairway is to provide pedestrian access to different levels of a building or structure." Although "MCL 554.139(1)(a) does not require perfect maintenance of a stairway[,] and "[t]he stairway need not be in an ideal condition, nor in the most accessible condition possible," the stairway "must provide tenants 'reasonable access' to different building levels." *Id*.

The facts in *Hadden* were as follows:

Plaintiff testified that she lived on the second floor of defendant's apartment building. In order to access her mailbox on the first floor, plaintiff used the stairway in question, which consisted of approximately 12 open steps located outside the building but covered by a roof. Plaintiff testified that the day before the fall, she left her apartment to check her mail and noted the presence of snow on all the stairs of the stairway. Although she was able to use the stairway without incident, plaintiff called defendant and complained to "Lori" about the presence of snow and ice on the stairway. She was told that "Scott" would take care of it when he had the time.

Plaintiff testified that on the day of the fall, before she had left her apartment, she again called and notified defendant about the presence of snow and ice on the stairway. Plaintiff produced weather data indicating that preceding her fall, temperatures were at or below freezing, and the area experienced episodes of light freezing rain and at one point "ice pellets." At approximately 1:00 p.m. on December 1, 2006, plaintiff left her apartment to check her mail. She noticed "lots of snow" that was "fresh," and that there was "more than a couple of inches" on the second floor as she walked toward the stairway. Plaintiff descended the stairway and checked her mailbox. Plaintiff's testimony was conflicting on the issue whether she noticed snow or ice on the stairway before her fall. On her way back up the stairway, plaintiff used the right side of the stairway so that she could use the handrail. As she reached the second step, plaintiff slipped and fell on ice, fracturing her left hip. She testified that she did not see the ice before her fall because it was black ice and the stairway was too dark. As she fell, however, plaintiff noticed that the gutters overhead were overflowing with water and icicles had formed. Plaintiff testified that there was no salt on the stairway at the time of her fall. [*Id*. at 130-131.]

Comparing the facts in *Hadden* to those in *Allison v AEW Capital Mgt*, *LLP*, 481 Mich 419; 751 NW2d 8 (2008) the *Hadden* panel concluded:

We agree with the trial court that plaintiff has produced enough evidence to create a material question of fact whether the stairway was fit for its intended use at the time of plaintiff's fall. As stated earlier, the primary purpose of a stairway is to provide pedestrians reasonable access to different levels of a building or structure. Reasonable minds could conclude that the presence of black ice on a darkly lit, unsalted stairway—possibly caused or aggravated by overflowing ice water from overhead gutters in the presence of freezing rain—posed a hidden danger that denied tenants reasonable access to different levels of the apartment building and rendered the stairway unfit for its intended use.

This case is factually distinguishable from *Allison* because black ice on a stairway presents more than the "[m]ere inconvenience" posed by "one to two inches of snow" in a parking lot. Furthermore, as the Court stated in *Allison*, the primary use of a parking lot is to park cars. Although the Court recognized that

tenants must have reasonable access to their vehicles in a parking lot, i.e., they must be able to walk to the vehicles, tenants do not use a parking lot for its intended use by merely walking in the lot. Walking in a parking lot is secondary to the parking lot's primary use. In contrast, a tenant uses a stairway for its intended use solely by walking up and down it. Thus, the primary purpose of a stairway is for walking. Indeed, the primary purposes and, therefore, intended uses of a parking lot and a stairway are two different things.

Therefore, under all the circumstances presented here, the snow- and ice-covered stairway may not have been fit for its intended use at the time of plaintiff's fall. We agree with the trial court that this issue presents a material question of fact for the jury. [*Hadden*, 287 Mich App at 131-132 (cleaned up).]

Similarly, in this case, plaintiff argues that the three-step wooden stairway outside her first-floor apartment unit was not fit for its intended use of providing reasonable access to her apartment and the ground level because the steps were covered in algae, which caused them to be "very slippery." Consequently, plaintiff contends the trial court erred by summarily dismissing her statutory claim under MCL 554.139(1)(a). I agree.

Plaintiff testified that her apartment had two different access doors and each door had a set of exterior wooden stairs for ingress and egress. Plaintiff presented photographs reflecting three wooden steps connected to a wooden porch under a covered roof in front of the main entrance to her unit. Plaintiff maintained that, beginning in May 2019, both exterior stairways had become "algaefied" and, as a result, "very slippery." Plaintiff testified that the "algaefied" condition was present daily, and the slippery condition worsened when the steps were wet. Plaintiff testified that she slipped on the steps outside her main entrance in May 2019, which was a few months before the August 2019 incident. Plaintiff stated that she notified defendant in May 2019 that she slipped on the steps. She further testified that she made "multiple phone calls [to the landlord] to have the steps either cleaned or the safety strips put on the steps." According to plaintiff, the second and third (middle and bottom) steps of the stairway outside her main entrance "were completely covered in the green substance" on the date of her fall. And plaintiff testified that the steps on the other stairway leading from her apartment "were just as algaefied and slippery as the front . . . ."

According to plaintiff's expert's report, which was uncontroverted, the grooves or wood grains in the surface of the wooden stair treads "become filled with grime and flora like algae and moss" and "[t]hese wood surface contaminants grow and continue to build up and spread during wet periods or in shady and humid areas as they need moisture for both growth and reproduction." Plaintiff's expert stated that the subject stairway is "located on the north side of the building[,] which is mostly shady and receives less sun to dry the surface." Plaintiff's expert averred that these contaminants made the steps slippery.

Viewing the evidence in the light most favorable to plaintiff as the non-moving party, I believe that there is a genuine issue of material fact whether the subject stairway was unfit for its intended use. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). I believe reasonable minds could conclude that the slippery algae-like substance covering both exterior stairways outside of plaintiff's apartment posed a danger that denied plaintiff reasonable access to her apartment and the ground level and rendered the subject stairway unfit

for its intended use. Accordingly, I would reverse the trial court's grant of summary disposition with regard to plaintiff's statutory claim under MCL 554.139(1)(a) and remand for further proceedings.


/s/ Sima G. Patel