*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAN BOWERMAN,

        Plaintiff-Appellant,

v

RED OAK MANAGEMENT CO., INC., and
WESTVELD SERVICES, LLC,

        Defendants-Appellees,
and

BOB'S ASPHALT & PAVING, INC.,

        Defendant.

UNPUBLISHED
September 12, 2024

No. 366338
Montcalm Circuit Court
LC No. 2022-028824-NO

Before: GADOLA, P.J., and K. F. KELLY and MARIANI, JJ.

MARIANI, J. (*dissenting*).

I respectfully dissent, as I disagree that either defendant in this case has shown entitlement to summary disposition on plaintiff's respective claims against them. In my view, genuine issues of material fact exist as to whether Red Oak violated MCL 554.139(1)(a) and whether Westveld breached its duty to act with ordinary care so as not to create an unreasonable risk of harm. These claims thus belong with a jury to resolve, and I would reverse and remand so that they can proceed accordingly.

As our Supreme Court recently confirmed, "[a] court's role at the summary disposition stage is narrow." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 109; 1 NW3d 44 (2023). It must be sure not to act as a factfinder, and must instead simply review the proffered evidence for genuine issues of material fact, which exist " 'when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party.' " *Id*. at 109-110, quoting *Allison v AEW Capital Management, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). This narrow role for the court is well settled, and I do not believe either defendant's bid for summary disposition can survive its proper application in this case.

Starting with defendant Red Oak, I see genuine issues of material fact as to whether it violated its obligation to plaintiff under MCL 554.139(1)(a). That subsection provides that, in every lease of a residential premises, the lessor covenants that "the premises and all common areas are fit for the use intended by the parties." MCL 554.139(1)(a). " 'Fit' is defined as 'adapted or suited; appropriate[.]' " *Allison*, 481 Mich at 429, quoting *Random House Webster's College Dictionary* (1997). "The statute does not require the lessor to maintain [a common area] in an ideal condition or in the most accessible condition possible . . . ." *Id*. at 430. The statute does, however, expressly require that its "provisions . . . shall be liberally construed." MCL 554.139(3).

The common area at issue in this case is the trash disposal area of Red Oak's apartment complex, which abuts the parking lot. Generally, in an apartment complex, trash disposal areas are used to provide tenants access to a place where they can dispose of their trash—in this case, a dumpster. Thus, as the majority concludes, Red Oak had a duty to ensure the common area at issue in this case was fit to provide the tenants of its apartment complex reasonable access to the dumpster. Furthermore, there is no dispute that the apartment complex in this case is specifically for senior citizens and those with disabilities. Given the apartment complex's limited class of tenants, the "use" of this trash disposal area that was "intended by the parties" to the leases for the complex—and the use for which that area needed to be "fit"—was necessarily use by elderly and/or disabled tenants, specifically. MCL 554.139(1)(a). Viewing the record in the light most favorable to plaintiff, I believe that reasonable minds could conclude that, at the time of plaintiff's injury, the trash disposal area was not fit for the use intended by these parties. See *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Photographs in the record document the layout and condition of the trash disposal area. There is a concrete slab on which the dumpster typically sits, and a sidewalk that runs from the apartment complex to one side of the slab. In this case, to accommodate the replacement of the concrete slab, the dumpster had been moved off to the side of the slab and onto a neighboring grassy area. The dumpster was placed on the side of the slab opposite from the one to which the sidewalk connected. The trench at issue in this case was ten feet long and approximately four to five inches deep, running the length of the front side of the concrete slab where the slab met the asphalt of the parking lot. The photographs show that, in order to access the dumpster from the building, tenants could follow the sidewalk to the concrete slab, and then reach the dumpster in one of two ways: either by walking across the slab and then onto and across the grassy area, or by walking into the parking lot and around the slab.

Accordingly, to reach the dumpster while avoiding the worksite and its recently poured concrete slab, tenants like plaintiff had to take a parabolic course around the concrete slab and the 10-foot trench that ran along its front side. It is undisputed that there were no visual aids installed to warn tenants of the trench's location, such as cones or caution tape. And the photographs also show that, in the dark—the time when plaintiff fell—the concrete slab was visible, but the trench itself was dark like the asphalt and difficult to see. This was further supported by the findings of plaintiff's expert, who opined that parking lots should have 0.5 foot candles of lighting in order to be considered safe for walking for tenants such as plaintiff and whose site investigation, which occurred in conditions similar to when plaintiff fell, yielded a reading of 0.0 foot candles at the location of her fall.

Evidence of record thus shows that tenants of Red Oak's apartment complex like plaintiff—who were necessarily senior citizens and/or individuals with disabilities—had to navigate around the trench in order to access the dumpster without crossing the worksite. And the evidence further shows that the visibility in that area after dark was low, and that there were no visual aids to demarcate the trench from the asphalt. Given these circumstances, I believe that, at minimum, reasonable minds could differ as to whether Red Oak discharged its obligation to ensure that the trash disposal area was fit for the use intended by the parties. *West*, 469 Mich at 183.

The majority posits that summary disposition was warranted because the trench was a "mere inconvenience," pointing to our Supreme Court's use of that phrase in *Allison* and to plaintiff's own knowledge of the trench and prior success in avoiding it. I struggle with this conclusion for a few reasons. To start, while the concept of "mere inconvenience" has cropped up in our caselaw regarding MCL 554.139(1)(a), its analytical role and value strike me as limited; that phrase is wholly absent from the statute and it does not (nor could it) supplant the words chosen by the legislature to define the scope of Red Oak's obligation thereunder. That obligation, the legislature made clear, is to ensure the area at issue is "fit for the use intended by the parties," and the scope of that obligation must be "liberally construed." MCL 554.139(1)(a), (3). If an area meets these statutory criteria, then a plaintiff cannot override that fact simply by identifying a mere inconvenience they faced; that was the point *Allison* used the phrase to illustrate. See *Allison*, 481 Mich at 430 (explaining that "[m]ere inconvenience of access, or the need to remove snow and ice from parked cars, will not defeat the characterization of a [parking] lot as being fit for its intended purposes"). But by the same token, if an area does not meet MCL 554.139's stated criteria, a defendant cannot escape liability and the statute's plain terms simply by characterizing the hazard as a mere inconvenience that the plaintiff could have conceivably avoided. See, e.g., *Estate of Trueblood v P&G Apartments, LLC*, 327 Mich App 275, 292; 933 NW2d 732 (2019) (finding that the fact that others were able to successfully walk on the icy sidewalk where the plaintiff fell did not overcome other evidence which indicated that the sidewalk was not fit for the use intended by the parties).

That a tenant may be able to a find a way to still use an area for a given purpose despite its hazards does not, in my view, mean that the lessor has discharged its duty to keep the area "fit"— that is, adapted or appropriate—for that use, particularly when fitness receives the liberal construction it must. See *Allison*, 481 Mich at 429; MCL 554.139(3). And while (for reasons discussed *infra*) a tenant's own fault for not better avoiding a hazard may bear on the ultimate extent of a lessor's liability, the lessor still owes to the tenant, and must meet, its statutory obligation as to that hazard; nothing in MCL 554.139 suggests otherwise. A contrary conclusion, I believe, would be to stray too far from MCL 554.139's plain terms, and into notions of the former open-and-obvious-danger doctrine that have long had no place in the statutory analysis. See, e.g., *Benton v Dart Properties, Inc*, 270 Mich App 437, 440-441; 715 NW2d 335 (2006).

Furthermore, I do not view the trench at issue in this case as a "mere inconvenience," let alone one as a matter of law. Nothing suggested that this 10-foot-long, four-to-five-inch-deep trench would be reasonably safe to just leave in place; it was an unfinished portion of a construction project that was in a location that (elderly and disabled) tenants would regularly need to access, and that representatives of both Red Oak and Westveld admitted was a potential trip hazard. While plaintiff may have successfully avoided the trench during prior trips to the dumpster, plaintiff testified that none of those previous instances occurred at night. And more fundamentally, as

discussed, the fact that the common area had been successfully traversed in the past is not itself dispositive of whether the area was fit for the use intended by the parties. See *Estate of Trueblood*, 327 Mich App at 292. At minimum, I believe the record presents genuine issues of material fact in this regard that are for a jury, and not the trial court or this Court, to resolve.

I would thus conclude that, viewing the record in the light most favorable to plaintiff, reasonable minds could differ as to whether the trash disposal area was fit for the use intended by the parties and, correspondingly, that Red Oak was not entitled to summary disposition on plaintiff's claim under MCL 554.139(1)(a).[1]

Turning to plaintiff's claim against Westveld, I agree with the majority that there is no genuine issue of material fact that Westveld was not in possession and control of the trash disposal area at the time of plaintiff's injury; accordingly, Westveld did not owe a duty to plaintiff under a theory of premises liability. Westveld did, however, owe a duty to plaintiff under a theory of ordinary negligence, as plaintiff alleged in her complaint. And I disagree that Westveld is entitled to summary disposition on that claim.

An ordinary negligence claim is made up of four elements: duty, breach, causation, and harm. *Kandil-Elsayed*, 512 Mich at 110. As the majority acknowledges, Westveld had a duty to perform its work with ordinary care so as not to create an unreasonable risk of harm. The majority also acknowledges that, "[g]enerally, unless the court can conclude that all reasonable persons would agree the defendant did not create an unreasonable risk of harm, whether a defendant's conduct in the particular case breached this general standard of care is a question of fact for the jury to decide." *Finazzo v Fire Equipment Co*, 323 Mich App 620, 634; 918 NW2d 200 (2018). As Westveld concedes, it did not seek summary disposition below on the basis that it did not breach this duty to plaintiff. And rightly so, in my view, as the record betrays genuine issues of material fact on that point.

---

[1] Plaintiff also claimed that, because the lighting in the parking lot violated local health and safety laws, Red Oak violated its obligation under MCL 554.139(1)(b) "to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located." The majority concludes that it need not address this claim because the area of the apartment complex at issue is a "common area" and not part of the "premises," which renders subsection (1)(b) wholly inapplicable to this case. I disagree with this proposition. As this Court has explained, subsection (1)(b) comprises two distinct covenants: "a landlord's covenant to comply with local health and safety laws is distinct from its covenant to make reasonable repairs." *Estate of Trueblood*, 327 Mich App at 295. And while the covenant to make reasonable repairs is limited only to the "premises" and not the "common areas," the covenant to comply with health and safety laws applies to both. *Id*. at 293-295. Nonetheless, I do not see error in the trial court's award of summary disposition to Red Oak as to this portion of plaintiff's claim, as plaintiff has failed as a matter of law to show noncompliance with any applicable health or safety laws. That said, as discussed *supra*, plaintiff put forth evidence regarding the inadequacy of the lighting in the parking lot that is relevant to her claim under MCL 554.139(1)(a), regardless of the success of her claim under MCL 554.139(1)(b).

Westveld was responsible for creating the trench at issue and for placing the dumpster on the grassy area neighboring the concrete slab. Testimony from Westveld's owner and operator established that the company ordinarily puts out caution tape and cones to warn of conditions like the trench but failed to do so for this trench. He also testified that the company filled in other trenches around the parking lot with sand or asphalt milling but failed to do so for this trench. And he admitted that this trench was a potential trip hazard. Viewing the record in the light most favorable to plaintiff, I believe that, at minimum, reasonable minds could differ about whether Westveld created an unreasonable risk of harm under these circumstances. *West*, 469 Mich at 183.

As with Red Oak, the majority concludes Westveld was entitled to summary disposition based on plaintiff's own actions and awareness of the trench, explaining that, for many of the same reasons that the trial court found the trench to be open and obvious, Westveld did not breach its general duty of ordinary care. Plaintiff's actions may speak to her degree of comparative fault, but I fail to see how they show Westveld did not, as a matter of law, breach its duty of care. Under Michigan's comparative-fault framework, "when a plaintiff is at fault, it does *not* bar recovery, but rather reduces the amount of damages they can recover by their percentage of fault." *Kandil-Elsayed*, 512 Mich at 133 (emphasis in original). And the extent of plaintiff's own liability for her injuries are to be allocated by the trier of fact. *Id*. at 136; see also *Gabrielson v Woods Condo Ass'n Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 364809 and 36481); slip op at 13 (explaining that, after *Kandil-Elsayed*, the "plaintiff's knowledge of the hazardous condition is now only relevant to [the] plaintiff's comparative fault" and "is not dispositive on the question whether the defendant breached the duty owed to the plaintiff").

Relying on *Finazzo*, 323 Mich App 620, the majority reasons that plaintiff's actions demonstrate that Westveld did not create an unreasonable risk of harm. I find *Finazzo* distinguishable. There, the plaintiff tripped over a visible cable while the defendant was installing a fire alarm system. *Id*. at 623. Unlike this case, it was undisputed that the defendant warned the plaintiff about the cable and that the room where the plaintiff tripped was fully illuminated. *Id*. at 636-637. The plaintiff pointed to no action by the defendant which created an unreasonable risk of harm. But here, Westveld's conduct demonstrates the unreasonable risk of harm, or at least a genuine factual dispute in that regard. Record evidence indicates that, despite the admittedly hazardous nature of the trench, Westveld failed to follow its ordinary protocol of putting up cones and caution tape and failed to fill in the trench as it did for other trenches in the parking lot. Viewing Westveld's conduct in the light most favorable to plaintiff, reasonable minds could conclude that it created an unreasonable risk of harm. Reasonable minds might also conclude that plaintiff bears comparative fault for her injuries and her recovery should be reduced accordingly. But given the record at hand, the questions of Westveld's breach and plaintiff's comparative fault belong with the jury, as factfinder, to resolve, and not with the trial court or this Court to decide as a matter of law.

Accordingly, I would reverse the trial court's award of summary disposition as to both Red Oak and Westveld and remand for further proceedings.

/s/ Philip P. Mariani