*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MSGT RONALD R. MATTEN,

        Plaintiff-Appellant,

v

UNITED SERVICES AUTOMOBILE
ASSOCIATION,

        Defendant-Appellee.

UNPUBLISHED
October 24, 2024
2:56 PM

No. 366670
Wayne Circuit Court
LC No. 21-017683-CZ

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

Plaintiff-Appellant MSgt. Ronald R. Matten brought a breach-of-contract claim against Defendant-Appellee United Services Automobile Association (USAA) after defendant denied his property insurance claim stemming from a 2021 house fire that destroyed plaintiff's rental property. Defendant moved for summary disposition, arguing that plaintiff made material misrepresentations about prior repairs to the roof of the property and that, under the terms of the policy, defendant was entitled to deny the claim as a result. The trial court granted summary disposition in favor of defendant, finding that there was no genuine issue of material fact as to whether plaintiff made a material misrepresentation. We reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Plaintiff owns a multi-family home located in Detroit (the property) which is divided into two units that he rented to tenants. He purchased a rental property insurance policy (the policy) from defendant which included coverage for loss due to fire damage. The policy provides, in pertinent part:

**15. Concealment, Misrepresentation or Fraud.**

a.     At our option [defendant] may deny coverage or declare the entire policy void from the beginning of the policy term if you or any other **'insured'**, whether before or after the loss, has:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct relating to this insurance; or

(3) Made false statements which, if known by [defendant], would have caused [defendant] not to:
>     a. Issue the policy;
>     b. Issue the policy in as large an amount;
>     c. Provide coverage for the hazard resulting in the loss; or
>     d. Issue the policy for the same amount of premium or at the same rate.

The policy further provides that it may be cancelled "[u]pon discovery of fraud, concealment or misrepresentation made by or with the knowledge of any 'insured' in obtaining this policy, continuing the policy or presenting a claim under this policy."

The roof of the property was damaged and repaired several times in recent years. In November 2011, after a storm damaged the roof, plaintiff filed a claim with defendant and was paid $8,008.23 (2011 claim), though it is unclear from the record what repairs were made at that time. In 2016, plaintiff filed another claim regarding the roof of the property following damage from another storm (2016 claim). In connection with this claim, on August 11, 2016, plaintiff sent an email to defendant which stated: "Roof estimate attached." The document attached to plaintiff's email was on Sarome Construction letterhead but was otherwise handwritten in black ink (the original Sarome document). It stated "*Complete Roof*", contained an itemized list of work, and then stated "($11,500 material + labor)". It is unclear from the record what, if anything, prompted plaintiff to send the email to defendant (e.g., if defendant asked plaintiff to provide proof of repairs, or asked him to provide an estimate). On August 13, 2016, USAA representative Yolanda Rodriguez responded to plaintiff's email as follows:

> Good Morning Sir, I am assisting your Team in the process of your claim. Your recent post (sic) you included what appears to be an invoice from Sarome GC? There is not any date, nor invoice number or a detailed itemized list for the charge of $11,500.00. Yet, there is a handwritten note indicate (sic) " * complete roof * $11,500 material & labor ". This gives me the impression that the work is complete for the cost you incurred of $11,500.00. Our records do not show that we had reviewed or approved any amount higher than the Adjuster estimate of $6,660.92[.] I will request for that payment to be release (sic) out to you Monday of next week[.]

Defendant paid plaintiff $5,660.92 for his 2016 claim (the adjuster's estimate of $6,660.92 minus plaintiff's $1,000 deductible). According to defendant, the $5,660.92 was for a total roof replacement, but there is nothing in the record which indicates that the money was for a roof replacement as opposed to repairs on the roof.

In 2017, defendant performed a routine general inspection and survey of the property. The inspection report included photos of the property in which the roof, according to defendant, appeared to be dilapidated. Unrelated to any claim made on the policy, in 2019, Sarome Construction fully replaced one of the four sides of the roof. And in 2020, plaintiff made additional repairs to the roof on his own.

On March 8, 2021, a fire significantly damaged the property (2021 claim).  Plaintiff characterizes the damage from the fire as a "complete loss of the structure" and as a "total property loss to [plaintiff] and [plaintiff's] tenant's personal property."  Defendant does not dispute either characterization.[1]  Plaintiff filed a claim with defendant and, on March 23, 2021, as part of the claims process, USAA representative Jonathan Williams asked plaintiff to provide documentation "to support that he completed repairs to the roof from the prior two claims for which [defendant] paid him to fix," referring to the 2011 and 2016 claims.  Williams explained that defendant was requesting the documentation "in order to determine if there [was] overlap in coverage which may need to be deducted from this loss."  On March 26, 2021, plaintiff called defendant to inquire about the status of his claim.  Williams's notes in the USAA activity log documenting the call state:

> I also discussed with [plaintiff] the prior roof claims and whether or not he replaced the roof prior to this fire occurrence.  [Plaintiff] advised that he did and that he was trying to get the paperwork from his contractor to send to us. If coverage is provided, I will determine what if any deductions will need to be taken from this claim and or how much.  I explained this to [plaintiff] and he understood.

On March 29, 2021, plaintiff resubmitted the original Sarome document to defendant.  Williams replied to the submission: "Dear Member, Thank you for submitting this. There is no date on this invoice.  Can you provide any other proof of payment such as a cancelled check or card statement, etc.  Thank you."  Plaintiff replied: "Apologize.  The roof repair was completed September 1, 2016 and paid cash to the contractor."  The document attached to plaintiff's email was identical to the original Sarome document, except "9/1/2016" and "cash payment" are handwritten on the document in blue ink (altered Sarome document).

During his deposition, plaintiff testified that he added the blue ink handwriting shortly after the fire in 2021.  When asked why, plaintiff explained that, in his conversations with Williams following the fire, he was trying to understand what he was entitled to recover and that he sent the altered Sarome document to Williams as part of an ongoing conversation to determine what he was eligible to recover.  Plaintiff testified that he had told Williams that the Sarome document was not an invoice and that he believed, by sending his notes, he was continuing the conversation between him and Williams, and explaining that he only paid Sarome Construction in cash.

After plaintiff submitted the altered Sarome document, Williams noted in the USAA activity log that, based on photographs of the home taken in connection with a 2020 claim for interior water damage, it "did not appear that the roof was replaced on 09/01/2016 as [plaintiff] implies with the invoice that he submitted."  Williams escalated plaintiff's claim to USAA's Special Investigations Unit (SIU) to determine whether he had made a material misrepresentation.

On April 1, 2021, the SIU investigator conducted a recorded telephone interview with Sarome Timmons, Sr., owner of Sarome Construction.  Timmons explained that the original Sarome document was an estimate he gave to plaintiff in 2016.  He stated that he did not do any

---

[1] Fire inspectors were unable to determine the cause of the fire, but the record suggests that the fire was caused by lint build-up from an old dryer in the basement of the property.  It is undisputed that plaintiff was not involved in the cause of the fire.

work on the roof of the property on or before September 1, 2016, but that he had replaced one side of the roof in 2019. Timmons stated that he had also done some shingle repairs on the roof in the past, but the SIU investigator did not ask Timmons when those repairs were made. Timmons also confirmed that plaintiff always paid him in cash.

The next day, the SIU investigator conducted a twenty-minute, recorded telephone interview with plaintiff. When the SIU investigator asked plaintiff about the altered Sarome document, plaintiff readily admitted that he added the handwriting in blue ink shortly after speaking with Williams. Initially, plaintiff confirmed to the SIU investigator that the roof was replaced in 2016. But when asked questions about the work that was done in 2016, plaintiff told the investigator that the work was done five years ago and he had difficulty remembering the details, such as whether he paid Sarome Construction in installments or not. He could not recall if a permit had been pulled for the work, if he had used Sarome Construction before 2016, or when Sarome Construction replaced one side of the roof.

When the SIU investigator asked plaintiff to explain Timmons's statement that he only provided an estimate to plaintiff in 2016, plaintiff responded that he thought the work had been done in 2016, that he understood what the investigator was saying, but that he did not recall the document being an estimate. The investigator then asked plaintiff "what reason would [Timmons] have to lie to me?", which began a long, contentious exchange between plaintiff and the investigator, during which plaintiff repeatedly denied being untruthful. The SIU investigator asked no further substantive questions and the call was ended.

In his deposition, plaintiff testified that during his first recorded interview with the SIU investigator, he was in his car, onsite at the property and did not have access to his records. He testified that after the call, he went home, looked back through his records, and realized he had made a mistake. The following business day, April 5, 2021, plaintiff called defendant back to clarify his mistake. Plaintiff explained on the call that he did a "deeper dive" into his records and that the document he sent was a quote, not a receipt. He explained that he made the notes in blue ink in response to Williams's questions and that his intent was to relay that he had paid cash for any work done on the roof. He further explained that repairs had been made to the roof, but there had not been a complete replacement, and that he had gotten his information confused and made a mistake when he spoke to the SIU investigator earlier. Plaintiff confirmed to the investigator that the entire roof was not replaced in 2016. He stated that Sarome Construction repaired shingles on a "major portion" of the roof in 2016, but could not say how many shingles were replaced or what percentage of the roof was worked on. He also could not provide documentation of the work because he paid cash.

On May 28, 2021, defendant sent plaintiff a denial of coverage letter which stated that the claim for fire damage was not covered because plaintiff "intentionally concealed/misrepresented material facts" in the presentation of his 2021 claim. After plaintiff sued defendant for breach of contract, defendant moved for summary disposition, arguing that there was no genuine dispute that plaintiff misrepresented material facts in the presentation of the 2021 fire damage claim regarding the replacement of the roof in 2016. Therefore, defendant argued, it was entitled to deny coverage

under the terms of the policy and thus did not breach the contract. The trial court granted defendant's motion and plaintiff now appeals.[2]

## II. STANDARD OF REVIEW

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. . . . Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).[3] "[W]hen reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a court must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists." *Dextrom v Wexford Co*, 287 Mich App 406, 430; 789 NW2d 211 (2010). "If the court does determine that a genuine issue of material fact exists, then the motion must be denied and the issues are left to a fact-finder to resolve at a trial." *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A court's role at the summary disposition stage is narrow; in its review of the evidence, the court cannot make findings of fact." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 109; 1 NW3d 44 (2023) (cleaned up). Accordingly, when reviewing motions for summary disposition under MCR 2.116(C)(10), courts "may not weigh evidence, make determinations of credibility, or otherwise decide questions of fact." *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 346; 941 NW2d 685 (2019).

## III. DISCUSSION

Plaintiff argues that the trial court erred in granting summary disposition to defendant because there are genuine issues of material fact as to whether he made a material misrepresentation in the presentation of his 2021 claim. We agree.

In granting summary disposition to defendant, the trial court concluded that defendant could deny coverage to plaintiff under the policy's fraud exclusion provision. Michigan courts have established a four-element test to determine the application of fraud exclusions in insurance contracts. To prove the insured has willfully misrepresented a material fact, an insurer must show

---

[2] Plaintiff also brought claims against defendant for violation of the Michigan Consumer Protection Act, breach of implied warranty of good faith and fair dealing, and intentional infliction of emotional distress. Like plaintiff's breach-of-contract claim, the trial court granted summary disposition in favor of defendant on those claims. On appeal, plaintiff has not challenged the trial court's disposition of those claims.

[3] Defendant's motion for summary disposition was brought under MCR 2.116(C)(8) and (C)(10), and the trial court did not specify under which sub-rule it granted the motion. Because the trial court did not rely on the pleadings alone and instead considered documentary evidence, deposition testimony, and affidavits, we construe the trial court's order as resolving the motion pursuant to MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

that "(1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without knowledge of truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014), abrogated on other grounds by *Williams v Farm Bureau Mut Ins Co of Mich*, 335 Mich App 574; 967 NW2d 869 (2021). "Fraud or false swearing implies something more than mistake of fact or honest misstatements on the part of the insured." *Mina v Gen Star Indem Co*, 218 Mich App 678, 686; 555 NW2d 1 (1996), reversed in part on other grounds, 455 Mich 866; 568 NW2d 80 (1997). Reliance on an exclusionary clause in an insurance policy is an affirmative defense; therefore, the burden of proof lies with the insurer. *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017). "Thus, to obtain summary disposition the insurer must show that there is no question of material fact as to any of the elements of its affirmative defense." *Id*.

While defendant has shown there is no genuine dispute as to some elements of its coverage defense, the record reflects genuine issues of material fact as to others; accordingly, defendant is not entitled to summary disposition.

To start, there is no genuine dispute that plaintiff's representations regarding the roof were material. "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Fashho v Liberty Mut Ins Co*, 333 Mich App 612, 618; 963 NW2d 695 (2020). Defendant argues that any misrepresentations regarding the roof were reasonably relevant to the investigation of plaintiff's 2021 claim—and therefore material—because the past repairs on the roof had a direct bearing on the amount defendant would pay plaintiff for his claim. Plaintiff argues that his representations were not material to his 2021 claim because they were made in the course of processing his 2016 claim, which had nothing to do with the 2021 fire. But defendant relies on plaintiff's representations from two different periods of time: (1) plaintiff's submission of the original Sarome document in 2016, which defendant alleges he presented as an "invoice"; and (2) plaintiff's statements during the 2021 SIU investigation confirming that the roof was replaced back in 2016. It cannot be disputed that plaintiff's 2021 statements were made during the investigation of his 2021 claim. Further, under the terms of the policy, the fact that a misrepresentation was made before the 2021 claim arose is irrelevant. Defendant was entitled to deny coverage for misrepresentations made by the insured "before or after the loss." Plaintiff's argument fails to demonstrate a genuine issue of fact as to whether the statements were "reasonably relevant" to defendant's investigation. *Fashho*, 333 Mich App at 618.

Turning to the second element—falsity—the record does not support defendant's contention that plaintiff made a false misrepresentation by submitting the original Sarome document in 2016. Defendant argues that by submitting the document, plaintiff "presented a paid invoice for work completed in full." But plaintiff's 2016 email plainly shows that he presented the document as an "estimate." Indeed, Rodriguez, the USAA representative who reviewed the document initially, noted that it was missing several of the features typically found on an invoice or receipt, like a date and itemized pricing for specific services. While plaintiff did not correct Rodriguez's statement that the document, in some ways, appeared to be an invoice, there was no onus on him to do so. No one from USAA asked him to clarify or to send additional information. Instead, Rodriguez essentially confirmed that defendant planned to pay him the adjuster's estimate regardless of what documentation was supplied. By contrast, plaintiff's initial representation during the SIU investigation of his 2021 claim—that the roof had been replaced in September

-6-

2016—was undisputedly false. Plaintiff confirmed to the SIU investigator that the statement was false shortly after his first recorded interview, and later confirmed the same in his deposition. He makes no contrary argument here on appeal.

While defendant has established the first two fraud exclusion elements, genuine issues of material fact exist as to whether plaintiff knew that his 2021 misrepresentations were false at the time he made them and whether they were made with the intent to defraud defendant. "Where an insurance policy provides that an insured's concealment, misrepresentation, fraud or false swearing voids the policy, the insured must have actually intended to defraud the insurer." *West v Farm Bureau Mut Ins Co of Mich*, 402 Mich 67, 69; 259 NW2d 556 (1977). Generally, whether the insured had intent to defraud is a question for the jury. *Id*. at 70. Further, a question of fact exists where the insured presents a "plausible non-fraudulent explanation" for the misrepresentation. *Id*.

According to defendant, plaintiff essentially forged the altered Sarome document as part of a scheme to falsely inflate the value of the roof, and he continued with the lie until he was caught by the SIU investigator, only then claiming that he made a mistake. But defendant fails to point to any specific evidence which conclusively establishes that plaintiff knew his misrepresentations were false, and therefore, fails to meet its burden of showing that there is "no question of material fact as to any of the elements of its affirmative defense." *Shelton*, 318 Mich App at 657. Defendant relies on the fact that plaintiff was asked twice during the investigation of the 2021 claim whether he replaced the roof back in 2016. But plaintiff's adherence to his incorrect answer is consistent with his explanation that he had a mistaken belief about what work was done at what time.

The record contains evidence which supports plaintiff's explanation that his misrepresentation was merely the result of his confusion about what work was done by Sarome Construction and when. Repairs were made to the roof several times between 2011 and 2021. It is undisputed that Sarome Construction partially replaced the roof in 2019 and that the company made patch repairs over recent years. Plaintiff could not remember when, specifically, the patch repairs were made and Timmons was not asked when the repairs were made. It is also undisputed that plaintiff always paid Timmons in cash and, as a result, little to no documentation exists showing when Sarome Construction worked on the roof. A reasonable juror could find that the lackadaisical recordkeeping relationship between plaintiff and Sarome Construction, paired with the frequency of roof repairs, led plaintiff to mistakenly believe that the roof, or part of the roof, was replaced in 2016. See *Allison v AEW Cap Mgt*, 481 Mich 419, 425; 751 NW2d 8 (2008) ("There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party."). Viewing the record in the light most favorable to plaintiff, he presents a "plausible non-fraudulent explanation" for his misrepresentation, which demonstrates that a question of fact exists. *West*, 402 Mich at 70.

Further, the record shows that plaintiff indicated to defendant his uncertainty about the record of repairs. In his first recorded interview, plaintiff repeatedly stressed that 2016 was many years ago and his answers demonstrated that he had little memory of the details of the work that was done. Plaintiff could not remember whether a permit was pulled or whether he paid Timmons in installments. When he was confronted with Timmons's account—that no work was done in 2016—plaintiff told the SIU investigator that he thought that the work reflected on the Sarome document had been done but conceded that he did not know. While defendant points to no specific

evidence that plaintiff knew his misrepresentation was false, record evidence supports plaintiff's assertion that the misrepresentation was merely an honest mistake, which is insufficient to satisfy the fraud exclusion elements. See *Mina*, 218 Mich App at 686 ("Fraud or false swearing implies something more than mistake of fact or honest misstatements on the part of the insured.").

Likewise, defendant fails to point to any specific evidence which, viewed in the light most favorable to plaintiff, conclusively shows that he intended to defraud defendant. Defendant relies on the fact that plaintiff submitted the Sarome document in order to be paid on his claim. But, again, plaintiff's actions are also consistent with his explanation that he was mistaken about the work performed and had no ill intention. Plaintiff testified that he submitted the altered Sarome document in an effort to answer Williams's questions about the work that had been done on the roof, as part of an ongoing conversation about what he was or was not eligible to recover, and to explain that he had only ever paid Sarome Construction in cash. His testimony is consistent with his "plausible non-fraudulent explanation" and, at the summary disposition stage, it is inappropriate for the court to make a credibility determination as to plaintiff's explanation. See *West*, 402 Mich at 70; *Sabbagh*, 329 Mich App at 346.

Defendant argues that this case is similar to *Fashho*, 333 Mich App at 622, where the plaintiff, the owner of an auto-repair shop, sought wage-loss benefits from the insurer after he misrepresented that he was unable to perform the majority of his job duties following an accident. *Id*. at 614-616. Surveillance footage of the plaintiff proved otherwise, leading this Court to conclude that the plaintiff knew he had made a misrepresentation because "[r]easonable minds could not differ" on the issue where the plaintiff "was the one performing the same functions of his job that he did before the accident while claiming a need for wage-loss benefits." *Id*. at 622. Based on the lack of dispute as to whether the plaintiff knew his representations were false, the Court concluded that "reasonable minds could only conclude that plaintiff made the misrepresentation with the intent that defendant pay him wage-loss benefits." *Id*. But here, unlike in *Fashho*, questions of fact exist as to whether plaintiff knew his representations were false, and so defendant cannot rely on an undisputed fact as to plaintiff's knowledge of the falsity of his misrepresentation to show intent to defraud. And defendant does not otherwise point to any evidence in the record to show plaintiff's intent.

Further, there is evidence in the record that supports plaintiff's argument that he did not intend to defraud defendant. In his first recorded interview with the SIU investigator, plaintiff readily admitted that he added the blue ink handwriting on the altered Sarome document. Plaintiff made his admission before he knew that Timmons had contradicted his representation that the roof had been replaced in 2016 (that is, before he was, under defendant's theory, "caught"). This undercuts defendant's theory that plaintiff was engaged in some larger scheme to defraud it by intentionally inflating the value of the roof, and is consistent with plaintiff's explanation that he submitted the altered Sarome document with his notes in an effort to answer Williams's questions. And the record also reflects, consistent with plaintiff's explanation, that, upon realizing that he had made a misrepresentation, he took immediate steps to correct it. He contacted the SIU investigator the following business day, admitted that the roof was not replaced in 2016, and told the investigator he had made a mistake. Accordingly, defendant has not met its burden of showing that there is no genuine issue of material fact as to whether plaintiff intended to defraud defendant.

In sum, there is no genuine dispute as to whether plaintiff made a misrepresentation in 2021 when he told the SIU investigator that the roof of the property had been replaced in 2016 and there is no genuine dispute as to whether the misrepresentation was material. But genuine issues of material fact exist as to whether plaintiff knew that the misrepresentation was false at the time he made it or if he was merely mistaken about which repairs had been made to the roof at which time. Plaintiff's evidence of the lack of documentation from Sarome Construction and of the number of repairs made to the roof around 2016 sets forth a plausible, non-fraudulent explanation for the misrepresentation and defendant failed to set forth evidence which satisfies its burden of showing that there is no genuine question of fact as to this element. There is also a genuine issue of material fact as to whether plaintiff intended to defraud defendant. As discussed, this is generally a question for the jury, particularly where, as here, the insured took steps during the investigation to correct the misrepresentation. And again, defendant failed to set forth evidence which satisfied its burden of showing that there was no genuine question of fact as to this issue. While a trier of fact might ultimately conclude that plaintiff's explanation is not credible and defendant should prevail on its coverage defense, defendant has not carried its burden of showing that, when the present record is viewed in the light most favorable to plaintiff, it is entitled to judgment as a matter of law on plaintiff's breach-of-contract claim. See *Kandil-Elsayed*, 512 Mich at 109; *Sabbagh*, 329 Mich App at 346.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani