*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HENRY FORD HEALTH SYSTEM,

Plaintiff-Appellant,

v

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, MICHIGAN
ASSIGNED CLAIMS PLAN, and
INTEGON NATIONAL INSURANCE
COMPANY,

Defendants-Appellees.

UNPUBLISHED
March 07, 2025
11:02 AM

No. 368076
Oakland Circuit Court
LC No. 2022-192865-NF

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Plaintiff Henry Ford Health System ("Henry Ford") appeals as of right two orders granting summary disposition to defendants, Michigan Automobile Insurance Placement Facility and Michigan Assigned Claims Plan ("MAIPF")[1], and Integon National Insurance Company ("Integon") (collectively, "defendants"). In granting defendants summary disposition, the trial court denied plaintiff's claims against both defendants for payment for medical treatment rendered to Joshua Durrah[2] for injuries he sustained in an auto accident. In this appeal, Henry Ford argues that Joshua's medical expenses were covered by the insurance policy issued by Integon to Joshua's grandfather, Alveko Durrah. Henry Ford also argues that if this Court were to find that Integon is not responsible for those medical expenses due to a valid opt out, then MAIPF was mandated to provide coverage for Joshua's injuries because no coverage was available from a higher-priority

---

[1] Plaintiff's complaint refers to defendants Michigan Assigned Claims Plan (MACP) and Michigan Automobile Insurance Placement Facility (MAIPF) interchangeably. For the sake of brevity, we will refer to those two defendants as MAIPF.

[2] Throughout this opinion, to avoid confusion, Joshua Durrah will be referred to by his first name because he shares a last name with his grandfather, Alveko Durrah, who is also referenced by first name in this opinion.

no-fault insurer. We conclude that, with respect to Integon, no evidence has been presented to establish that Alveko opted out of personal protection insurance ("PIP") coverage for allowable expenses under the subject policy, and thus, granting summary disposition to Integon was improper. We reverse the grant of summary disposition to Integon and remand to the trial court for further proceedings. We affirm the grant of summary disposition to MAIPF on the basis that Joshua was covered under the Integon policy as a resident relative of Alveko.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On March 5, 2021, Joshua was riding as a passenger in a 2011 Dodge Journey when the vehicle struck a parked car at the intersection of Woodward and Owen in Detroit. Joshua was severely injured and was transported from the scene by EMS to Henry Ford Hospital on West Grand Boulevard. Henry Ford treated Joshua for his injuries from March 5, 2021, through March 10, 2021. Following Joshua's discharge, Henry Ford made a claim for PIP coverage for allowable expenses with Integon, Alveko's insurance carrier. Joshua had no insurance of his own, but claimed that he would be covered by his grandfather's insurance policy because he was living with his grandfather at the time of the accident (i.e., he was a resident relative as defined by the Michigan No-Fault Insurance Act).

Before the accident, in 2020, when Alveko was seeking a quote for the subject policy, he spoke with an Integon representative over the phone about opting out of PIP coverage for allowable expenses because of his Medicare coverage. During that phone call, Alveko stated that he did not reside with his grandson. Alveko signed a PIP opt-out form on June 29, 2020, for a policy effective July 3, 2020. Thereafter, Alveko renewed the policy for the policy period running from January 3, 2021, to July 3, 2021. The Declarations ("DEC") Page of the policy solely listed Alveko's name under "Driver and Household Residents." Joshua was not listed on the DEC Page as a resident excluded driver or as a covered individual. The DEC Page further indicated that Alveko declined PIP coverage for allowable expenses because he was covered under Medicare.

Integon denied Joshua's claim on the basis that Alveko had declined PIP coverage for allowable expenses. On July 9, 2021, Joshua submitted an Application for Benefits (the "application") with the MAIPF. MAIPF denied Joshua's claim on October 28, 2021, on the basis that Integon's policy applied to Joshua's injuries under MCL 500.3114(1) because Joshua lived with his grandfather at the time of the accident.

Henry Ford filed the instant lawsuit against MAIPF on March 2, 2022, seeking an award of $143,619.83 for the medical treatment it provided to Joshua following the accident. Counsel for MAIPF made Henry Ford aware of Integon as a potential higher-priority insurer, and Henry Ford amended its complaint to add Integon as a defendant. The parties dispute whether Joshua is entitled to coverage through Integon or MAIPF or neither.

Both defendants moved for summary disposition under MCR 2.116(C)(10). Integon argued that although Joshua claimed PIP coverage under his grandfather's policy as a resident relative, Joshua was not entitled to PIP benefits because Alveko declined PIP coverage for allowable expenses for himself and any resident relative upon the inception of his policy. As a result, Integon argued, it was not responsible for the payment of Henry Ford's invoices. MAIPF argued that summary disposition was proper because Joshua lived with Alveko at the time of the

motor vehicle accident, and it was undisputed that Alveko was insured with Integon on the date of loss. Therefore, MAIPF maintained, MCL 500.3172 and MCL 500.3114 precluded Henry Ford from receiving benefits from the assigned claims plan for services rendered to Joshua.

Following a September 20, 2023 hearing, the trial court granted both defendants' motions for summary disposition. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo the grant or denial of a motion for summary disposition. *Maiden v Rozwood*, 461 Mich App 109, 118; 597 NW2d 817 (1999). "A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of the complaint, with the trial court considering the entire record in a light most favorable to the nonmoving party." *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 34; 852 NW2d 78 (2014). "A motion under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties fails to establish a genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008) (quotation marks, alteration, and citation omitted). "A genuine issue of material fact exists when, viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on an issue." *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013).

Issues of statutory interpretation are also reviewed de novo. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012). The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *Id*. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011).

## III. INTEGON WAS NOT ENTITLED TO SUMMARY DISPOSITION WHERE THERE IS NO EVIDENCE THAT ALVEKO OPTED OUT OF COVERAGE FOR ALLOWABLE EXPENSES REGARDING THE POLICY PERIOD AT ISSUE

The trial court erroneously granted summary disposition to Integon despite there being no evidence that Alveko opted out of PIP coverage for allowable expenses for the January 3, 2021 to July 3, 2021 policy period.

In Michigan, insureds may forego PIP medical coverage in exchange for lower premiums. The No-Fault Act prescribes a mechanism for consumers to elect lower levels of PIP coverage, but the default to unlimited PIP coverage for allowable expenses remains. To completely opt out of PIP coverage for allowable expenses, the statutory requirements state:

> (1) For an insurance policy that provides the security required under section 3101(1) and is issued or renewed after July 1, 2020, the applicant or named insured may, in a way required under section 3107e and on a form approved by the director, elect to not maintain coverage for personal protection insurance benefits payable under section 3107(1)(a) if the applicant or named insured is a *qualified person*,

-3-

and if the applicant's or named insured's spouse and any relative of either that resides in the same household have qualified health coverage or have coverage for benefits payable under section 3107(1)(a) from an insurer that provides the security required by section 3101(1).

(2) An applicant or named insured shall, when requesting issuance or renewal of a policy under subsection (1), provide to the insurer a document from the person that provides the qualified health coverage.

* * *

(4) If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective election under subsection (1), the policy is considered to provide personal protection benefits under section 3107c(1)(d).

(5) An election under this section applies to the applicant or named insured, the applicant or named insured's spouse, a relative of either domiciled in the same household, and any other person who would have had a right to claim personal protection insurance benefits under the policy but for the election. [MCL 500.3107d (emphasis added).]

"Qualified person" is expressly defined as a person who has qualified health coverage under subdivision (b)(*ii*). MCL 500.3107d(7)(c). Subdivision (b)(*ii*) is limited to individuals with coverage under Medicare Parts A and B. MCL 500.3107d(7)(b)(*ii*). For Alveko's opt out to be valid, he was required to have Medicare Parts A and B and additionally provide documentation reflecting that his spouse and any resident relative also had the requisite "qualified health coverage." Alveko produced his Medicare card, establishing his status as a qualified person.

Integon quoted Alveko over the phone and presented him with the option to opt out of PIP medical coverage for allowable expenses in exchange for reducing his premiums. This phone call was recorded and a transcript of the call was produced during discovery.[3] During the recorded phone call, Alveko briefly discussed opting out of PIP medical coverage because of his Medicare coverage, but he did not request to opt out of PIP coverage for allowable expenses at that time. On June 29, 2020, Alveko signed the PIP opt-out form for the policy period beginning July 3, 2020, but the policy period at issue in this case was from January 3, 2021, to July 3, 2021, because the accident occurred on March 5, 2021. Even if the phone call had occurred around the time of the 2021 policy period, it would not create a question of fact on the issue of a PIP opt out because (1) Alveko did not instruct the salesperson to sign the form on his behalf as stated in MCL 500.3107e(2)(b) and (2) Alveko did not agree to purchase insurance during the call; rather, he discussed insurance options (including uninsured motorist coverage, liability, and PIP coverage)

---

[3] The exact date of the call is not contained in the record but at oral argument before this Court, counsel for Integon stated that the call took place sometime during the summer of 2020.

and told the salesperson that he would call back because he was about to receive a phone call from his granddaughter.

The record contains no opt-out form for the 2021 policy period, and MCL 500.3107d contemplates that the requisite opt-out form will be completed at the time that a policy is originated and for renewals thereafter. Without any documentation supporting an opt out of PIP coverage for allowable expenses pertaining to the 2021 policy period, we cannot conclude that Alveko opted out of PIP coverage for allowable expenses for that policy term. As such, summary disposition was improper. We reverse the order granting summary disposition to Integon and remand to the trial court for further proceedings.

## IV. SUMMARY DISPOSITION TO MAIPF WAS PROPER

The trial court correctly granted summary disposition to MAIPF because an applicable insurance policy existed at the time of Joshua's accident pursuant to MCL 500.3114(1). While Alveko's phone call with Integon could create some question as to Joshua's domicile at the time of the accident, in briefing and at oral argument, the parties agreed that Joshua's domicile was with his grandfather. Given that, Joshua was a resident relative of Alveko under the relevant law.

MCL 500.3114 details the applicability of PIP coverage. Subsection 1 provides, in relevant part:

> Except as provided in subsections (2), (3), and (5), *a personal protection insurance policy described in section 3101(1)*[4] ***applies*** *to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.* [Emphasis added]

Subsection 4 details who is entitled to recovery from the MAIPF. MCL 500.3114(4) states:

> (4) Except as provided in subsections (2) and (3), a person who suffers accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle who is not covered under a personal protection insurance policy as provided in subsection (1) shall claim personal protection insurance benefits under the assigned claims plan under sections 3171 to 3175. *This subsection does not apply to a person insured under a policy for which the person named in the policy has elected to not maintain coverage for personal protection insurance benefits*

---

[4] MCL 500.3101(1) requires vehicle owners to maintain PIP coverage. It provides:

> Except as provided in sections 3107d and 3109a, the owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance and property protection insurance as required under this chapter, and residual liability insurance. Security is only required to be in effect during the period the motor vehicle is driven or moved on a highway.

*under section 3107d* or as to which an exclusion under section 3109(2) applies, or who is not entitled to be paid personal protection benefits under section 3107d(6)(c) or 3109a(2)(d)(ii). [Emphasis added].

Turning to MCL 500.3172(1), this section enumerates four circumstances in which a claimant is due benefits through the MAIPF. It states:

A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may claim personal protection insurance benefits through the assigned claims plan if any of the following apply:

(a) No personal protection insurance is ***applicable*** to the injury.

(b) No personal protection insurance applicable to the injury can be identified.

(c) No personal protection insurance applicable to the injury can be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss.

(d) The only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. [Emphasis added]

In the trial court, MAIPF argued that Joshua was covered under a policy under subsection MCL 500.3114(1), and thus, was not entitled to benefits through the MAIPF. See *Andary v USAA Cas Ins Co*, 512 Mich 207; 1 NW3d 186 (2023) (noting that MCL 500.3114(1) mandates that a policy cover relatives domiciled in the insured's home). By its own terms, MAIPF argued, MCL 500.3114(4) does not apply to Joshua because that subsection "does not apply to a person insured under a policy for which the person named in the policy has elected to not maintain coverage for personal protection insurance benefits under section 3107d. . . ." MCL 500.3114(4). It asserted that Joshua was covered under Integon's policy, and Alveko—the person named in the policy—elected not to maintain PIP coverage for allowable expenses under MCL 500.3107d. Accordingly, MAIPF argued, any reference to MCL 500.3114(4) was misplaced.

Conversely, Henry Ford argued that Joshua was neither listed on the Integon auto insurance policy as a resident relative nor was he contracted with Integon. Integon denied PIP coverage to Joshua, and based on this denial, no PIP coverage was available. If no PIP coverage was available, Joshua was entitled to coverage through the MAIPF. The issue thus becomes whether coverage was "available" to Joshua under his grandfather's policy.

Applicable PIP coverage for Joshua's injuries exists through Integon's policy, and, as a result, the trial court appropriately dismissed any claims against the MAIPF.

## V. CONCLUSION

After finding that Alveko opted out of PIP medical coverage, the trial court agreed with MAIPF, granted summary disposition in its favor, and dismissed Henry Ford's claims against MAIPF. We affirm the trial court's order granting summary disposition in MAIPF's favor, albeit on different grounds. Because we have held that no evidence supports Integon's argument that Alveko opted out of PIP coverage for allowable expenses with respect to the relevant policy period, we reverse the trial court's order granting Integon's motion for summary disposition and remand for further proceedings. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace

-7-